## LAPSLEY v. UNION PAC. R. Co.

### (Circuit Court, N. D. Iowa.   October 10, 1891.)

1. ACCIDENTS AT RAILWAY CROSSINGS—RINGING BELL.
   Under the statutes of Iowa, in cities the employes of a railway company, operating its trains are required to commence to ring the bells 60 rods before reaching the crossing, and to continue to ring it until the crossing is reached, and the omission to comply with this statute is negligence.

2. SAME—RATE OF SPEED AT CROSSING.
   There being no statute regulating the rate of speed at crossings, the common-law rule applies, which is that the duty and obligation rests at all times upon the railroad company to use ordinary care and prudence in the management of its trains in approaching crossings, so that no unnecessary risk or hazard shall be cast upon the public, who have the right to pass over said crossing, taking into consideration their location and surroundings.

3. SAME—FLAGMAN AND GATES AT CROSSINGS.
   The question of whether the railroad company should have flagmen or gates at crossings, in the absence of statutes, depends likewise on the circumstances, such as the amount of travel over the crossing, the obstructions, etc., and is a matter of fact to be determined by the jury.

4. SAME—IMPUTED NEGLIGENCE.
   Where a woman is riding on the back seat of a two-seated spring wagon, which is driven by her brother, who owns the team and wagon, and over which she has no control, and she is injured in a collision at a crossing by a railway train, if the negligence of the brother in driving upon the crossing contributes to said injury, held, that said contributory negligence cannot, as a matter of law, be imputed to her.

At Law.   Action by James J. Lapsley, administrator of the estate of Eliza J. Lapsley, against the Union Pacific Railroad Company, to recover damages for causing the death of his intestate.   Verdict and judgment for plaintiff in the sum of $1,000.

A. S. Wilson and S. H. Marsh, for plaintiff.

Wright & Hubbard and Wright & Baldwin, for defendant.

SHIRAS, District Judge, (charging jury.)   In this case the plaintiff, as administrator of the estate of Eliza J. Lapsley, seeks to recover against the defendant company for the amount of damages it is claimed was caused to the estate of Eliza J. Lapsley by reason of the fact that in November a year ago Miss Lapsley was killed by an accident happening upon the track of the defendant company.   In order to entitle the plaintiff to recover under circumstances of this kind, it is not sufficient simply to show that an accident has happened, and that injury or death has resulted therefrom, the accident being caused by a collision with the train of the defendant upon the road of the defendant company.   The burden is upon the plaintiff of going further, and showing, in the first instance, by a fair preponderance of the credible testimony in the case, that the accident was caused by negligence upon the part of the railway company.   In other words, this action is one that is

based on the charge of negligence, and the burden is upon the plaintiff of establishing it in the first instance. In this case there are three allegations of negligence made against the defendant company. Before passing to them, however, I will say, gentlemen, that the main facts in the matter are not in dispute between the parties. The evidence shows without contradiction that in November a year ago Miss Lapsley was in a wagon, being driven along the line of Leech street in this city, and that that street intersects or crosses the line of the defendant company; that while the wagon was being driven over the track of the defendant company it was struck by a train belonging to the defendant company, and that Miss Lapsley was thrown out, and received injuries which caused her immediate death. It is charged in the petition that the defendant company was guilty of negligence in three particulars. In the first place, it is said that there was no proper signal given of the approach of the train. Now, gentlemen, before passing to the particular facts, I should say to you that under the law of Iowa railroad companies have the right to place their tracks and run their trains upon a level with other highways; in other words, under the law of Iowa, a railway track and a public highway, like a street in the city, may be legally placed upon the same grade and intersect each other; so that as a necessary consequence it follows that in passing trains along the track of the railway company and persons driving vehicles along the street, where the street and railway track intersect each other upon the same level, there will be therefore necessarily danger of collision unless proper care is exercised by both parties to prevent a collision at any given time. Therefore, under this law, the railroad company had a right to have its track where it was, and to run its trains over and along that track. Also, the public had a right to pass over Leech street,—to drive vehicles over the same; but by reason of the fact that there would be danger of a collision unless proper care is exercised on the part of both the railway company and the persons using the street or highway, the law imposes upon both parties the duty and obligation of using and exercising proper care,—such care as a reasonable and prudent man should exercise in view of the circumstances that surround them at the time that either or both parties purpose to make use of the legal right that they have,—on the part of the railway company of running its train on its line of track over the highway, and on the part of the citizens of passing over the street across the track of the railway company, when they know that there is a liability or a possibility of trains coming along that track. Now, the amount of care or duty that is required by the law is the same as to both. The same rule is applied to both the railway company and to the individual citizen; and that is, as I have already said, the duty of exercising the amount of care and caution and skill that ordinarily prudent men should exercise in view of the circumstances that surround them at the particular time. Furthermore, it is a principle of law that when human life or limb may be put at risk or danger the care and caution and the skill that should be exercised is higher or greater than under circumstances where human life and limb may not be put at risk or danger.

As I have before stated to you, the plaintiff makes in this case three charges of negligence against the defendant company in the running and management of its train at this particular time when the accident happened. The first is that no proper signal was given of the approach of the train. The statute of Iowa requires that, when approaching a crossing where a highway intersects or crosses a railway track, it is the duty of the company to cause the whistle upon the engine to be sounded by two sharp blasts of the whistle, and that the bell must be rung continuously from that time, and from that point, to wit, 60 rods from the crossing, until the crossing is reached, with a proviso that in the case of cities the blowing of the whistle may not be required. In other words, the railway companies, in case of cities, where they are within the limits of cities, may be excused from giving the signal by the blast of the whistle. Therefore, so far as this case is concerned, as the evidence shows and it is admitted that this accident happened within the limits of the city of Sioux City, the question, so far as statutory obligation is concerned, comes down to the ringing of the bell. Therefore I charge you that the law is, under the statute of Iowa, that the duty and obligation rests upon the railway company of giving a signal when a train approaches within 60 rods of a street or highway crossing by the ringing of the engine bell, and the ringing should be continued, under the statute, from that point up to the time that the locomotive may reach the crossing or highway. Now, it is charged by the plaintiff that this signal was not given, and that, as a consequence thereof, the plaintiff and the person who was injured failed to receive notice of the approach of the train, and thereby the accident happened that caused the death of Miss Lapsley. Of course, as you understand, gentlemen, the purpose and object of requiring a signal of any nature to be given when a train is approaching a crossing or highway is that thereby warning may be given to the parties who are about to pass over the railroad track of the approach of the train, so that they, on their part, may be warned of the approach of the train, and exercise due care for their own protection. Now, gentlemen, it is a question of fact to be determined by you, under the evidence in this case, whether or no this train which struck the wagon, and which caused, in that sense, the death of Miss Lapsley,— whether or not, as that train approached this crossing or intersection of Leech street, the bell was rung in accordance with the requirements of the statute, and in such manner as to accomplish the purpose of its requirement. The evidence is in conflict upon that subject, and it is for you to determine what the fact is. All I can say to you is that the statute of Iowa requires that notice be given by the ringing of the bell. If the evidence satisfies you that the bell was rung, then negligence in that particular is not shown against the defendant company. On the other hand, if the evidence satisfies you by a fair and reasonable preponderance that the bell was not rung, then that justifies you in finding that in that particular the railroad company, through its failure to observe this statutory requirement, was guilty of negligence; and, if that contributed to or aided in causing the accident, that justifies you in finding that the

charge of negligence in this particular is made out against the railway company. It is for you to decide what the facts in that particular are.

The next charge of negligence is that the train was run at a high and unnecessary rate of speed. Now, gentlemen, there is no law in this state that fixes the rate of speed—that is, the number of miles per hour—that a train may run under the circumstances surrounding this transaction. The rule, therefore, to be applied is the common-law rule—the common-law rule that the duty and obligation rests at all times upon the railroad company to use proper care—ordinary care and prudence—in the running and management of its trains, so that no unnecessary risk or hazard shall be cast upon the public. So you see, therefore, that the question as to the rate of speed, whether it is negligence to run a train at a given rate of speed, depends upon the facts and circumstances surrounding the case. As has been said by counsel, when a train is running out upon the open prairie,—in the open country,—where there is not much liability to meet people crossing a track, and other sufficient signals are given, the cars may be run at a high and rapid rate; and there is no law that would require them to check the rate of speed when they are approaching the crossing, if the circumstances and surroundings of that crossing are such that, with the signals that they have given, reasonable warning of the approach of the train is given to the public. You see that is the test. The train must be run at such rate of speed, and accompanied by such signals, as that, as they approach these crossings or highways, a reasonable warning may be given to the public in order that any person desiring to cross may receive reasonable warning of the approach of the train, and be able to take proper care for his own safety. When trains are run into a city or place where there is a large amount of travel that may be expected to cross the railroad track at a given point, at the intersection of a given street, then the speed at which the train may be rightfully run there depends, as you see, on the circumstances that surround that particular crossing. Now, in determining that, you must take into account the surroundings of the crossing, the opportunities that parties may have who are coming down upon the street for the purpose of crossing the railroad track of observing and seeing trains. If there are no obstructions in the way, no buildings about the corners, so that persons driving along the street or highway have a full opportunity of seeing the trains as they come in either direction for quite a distance, and in that way, by the use of reasonable care on their part, may receive warning of the approach of trains, why then, in the exercise of ordinary care, the railroad company would be justified in running its trains at a more rapid rate of speed than it would be if the crossing was not so situated. Now, if you have a case in which, by reason of buildings or other natural obstructions, like trees or embankments, or the shape of the ground from a cut or embankment, or whatever it may be, the fact is that persons driving down and along the highway have their view obstructed, and they would be unable, by reason of these obstructions, to see the cars at any distance, then the railroad company must run its trains and determine the speed of trains

with reference to those facts; the test being always, as I said, that the running and management of the train must be with reference to this rule, that no unnecessary risk or hazard must be thrown upon the public who are there rightfully in the use of the highway. The public have a right to be on the highway; the railroad company has a right to run its trains upon its track; but both of them must use this right that they have with reference, you see, to the duty which it owes to the other party. Therefore the duty and obligation upon the railroad company is to run its train at such rate of speed as will not cast any unnecessary risk or hazard upon those who are using the highway. Therefore, with reference to the speed of the train, it is for you to determine under the evidence whether or no that charge of negligence is or is not made out, the burden being on the plaintiff. Does the evidence satisfy you that the train was running at this particular place at such rate of speed as that, taking into account the signals that were in fact given and intended to be given by the company, and provided for,—was the rate of speed at which that train was run of such character as to thereby cast unnecessary risk and hazard upon the persons rightfully in the use and occupancy of the street or highway at the crossing? If the evidence satisfies you that the train was run at a speed that cast this unnecessary risk and hazard upon those who were using the highway rightfully, that justifies you in finding that in this particular the railroad company was negligent, and, if that negligence aided or caused the accident, it would justify you in that regard in finding that issue in favor of the plaintiff. Of course, if the evidence fails to satisfy you of that fact, as I have said, the burden being on the plaintiff, then on that issue your verdict would be for the defendant, or your finding would be for the defendant upon that issue.

The third charge of negligence contained in the petition is that there was no flagman or other means of warning placed at this intersection of Leech street with the line or track of the defendant company. Now, there are circumstances that may surround railroad companies, such as the amount of business, the amount of travel over the street, the obstructions that surround the intersection of the street or the highway; that may require of the railroad company, not alone the giving of signals by the ringing of the bell or the sounding of the whistle or means of that kind, but may also require of them, in the exercise of proper care and prudence upon the part of the railway company, the placing of flagmen at the crossings, or the placing of gates, or some means by which the public will be warned of the approach of the train by signals that are given either by flagmen or the lowering or raising of gates, so that the persons who come down and along the highway are warned thereby that there is danger by reason of the coming of a train. The law does not define the way that should be done, excepting under the same general rule that I have already given you. The duty and obligation, as I have already said, is upon the railway company to take all reasonable care and prudence to so manage the running of its train, including the care of crossings,—the protection in that sense of the crossings,—as that the cars and trains may be passed over the

highway without casting any unnecessary risk or hazard upon the people who use the crossing. Now, then, if the surroundings of the crossing are of such a nature, the obstructions about it are of such a nature, and the amount of travel upon the highway is of such a nature, as that in the exercise of this duty, which the railroad company owes to the public, of the exercise of ordinary care for the protection of the public against danger from the passage of trains, as to require the placing of flagmen, or the placing of gates, or other like means of warning; if the evidence satisfies the jury that that was required of the railway company, and it was not done,—then that justifies the finding that in that particular the railway company had failed to exercise the degree of care which the law required of them, and of course justifies the finding of a verdict of negligence in that particular. Of course, before you can find that, you must be satisfied from the evidence that the facts and circumstances surrounding the parties at the place were such as to require of the railway company the exercise of this degree of care for the protection of the public upon the highway.

Now, gentlemen, in deciding all questions of this kind you must remember that you are to place yourselves as near as may be in the position that the parties occupied just prior to the happening of the accident. It is a familiar and common saying that hindsight is better than foresight. It is not that we can look back and, in the light that is now thrown upon the transaction, say that now, looking at it in view of the accident as it happened, that, if thus and so had been done, or this and that had not been done, the accident would not have happened. That is not a fair way of viewing the position of the parties. The question is, taking the position of the parties and the situation of affairs as it was just prior to the accident, as the matters then stood, what was then and there required of the parties in the exercise of ordinary care and prudence? Now, then, looking at that crossing before this accident happened, we will say on the morning of that day,—looking at that crossing, its nature, its character, and the obstructions that were round about it, whatever they may have been, taking into account the speed at which the railway company expected to run its trains over that crossing, taking into account all of those circumstances,—it is for you to say then whether, as the company then stood, and as the circumstances then appeared, the company did or did not exercise proper care and prudence on its part, whether it required the placing of flagmen or the placing of gates or any other means of warning at this crossing. These remarks that I have made apply to these other questions of negligence. We are to look at it as it would appear to reasonably fair and prudent men immediately prior to the time of the happening of the accident. If the evidence has failed to satisfy you that the defendant was guilty of negligence in any of the three particulars that I have named before you, that ends the case. Then the plaintiff has failed to make out the charge of negligence against the railroad company; and, that being the case, then your verdict must be for the defendant. If, however, under the evidence, you find that the defendant, under the instructions that I have given you, was guilty of

negligence in any one or more of the three particulars that I have named to you, and that by reason thereof the accident was caused which resulted in the death of Miss Lapsley, then, so far as this question of the negligence of the defendant is concerned, your finding would be for the plaintiff, and you would be required to determine the questions that arise under the defense of contributory negligence.

Now, it is a principle of law that where the negligence of both parties combine to produce the accident, then neither one can recover as against the other. The law does not attempt to separate out the consequences of the negligence of the one party, as distinguished from the negligence of the other. If the negligence of both parties contribute to or aid, as the proximate cause or causes in the producing of the accident, then neither one can recover from the other, and this is what is known in law as the defense of contributory negligence. As I have said to you, gentlemen, the law places upon the party—the citizen, the individual—who is about to use a highway or street which crosses over a railway track the duty of using due care, ordinary prudence, foresight, and caution for his own protection. A person is not justified, when he is approaching a railway crossing, in simply driving over it without taking any precautions at all to see whether there is a train approaching. It is his duty to know and he is bound to know that there may be trains coming down upon that track. As you drive down along a street or highway, and you see that there is a railroad track laid down across that street or highway, as you approach it; your own common sense tells you that may be a place of danger. You know the purposes for which those rails are laid there. It is intended that trains should pass over them, and you know that railroad trains are run at a very considerable rate of speed, and in many instances at a high rate of speed, and that they may rightfully run, under proper circumstances, at a high rate of speed. You know that trains are composed of many cars; that they are very weighty; and that it is impossible, in the nature of things, to always stop a train promptly; and that, therefore, as you approach that crossing, if there is a train coming upon the track, if you attempt to pass over it you may be subjected to risk and danger by so doing. Hence the law places on you, as you approach the crossing, the exercise of due care and caution for your own protection; just as, in the case of a railroad company, what a party should do as he approaches one of these crossings would depend on the surrounding circumstances. If you are driving in an open country, and the railroad track is in sight for a long distance on either side of you, the law expects you to exercise your senses of sight and hearing, and that you will be careful to see whether or no there is a train approaching, and whether you can or cannot safely attempt to make the crossing; and you are not justified in attempting to make the crossing if the train is approaching so close as that, if you attempt to make that crossing, you will thereby run the risk or danger of injury. Now, then, when a crossing is obstructed— I may say, however, further, as you approach a railroad track in an open country, and you have full opportunity of seeing the tracks for quite a distance, and if you fairly use your senses of

sight and hearing, the law places no obligation upon you unnecessarily to stop. If you can fairly see the track, and use fair caution and prudence for your own protection without stopping your horses, you are not obliged to do that. So, when you approach a crossing in the city or the town, the question whether you should or should not be required to stop your horses before you get upon the track depends upon the facts and circumstances that surround you at the time. You have a right to use the highway. You have a right to pass over the crossing. You have a right to assume that the railroad company on its part will give all necessary and usual signals and warnings of the approach of the train. You have a right to go towards the track expecting that those signals and warnings will be given. Then, taking into account all of the circumstances that surround the particular crossing, the law requires you now to use that amount of caution and skill and prudence for your own protection that ordinarily prudent men should exercise under like circumstances. If there are obstructions in the way of such character as that they prevent your seeing the track as you come close up to it,—that it is impossible by the use of your sight to ascertain whether or no in fact a train is or is not approaching,—does not then common prudence upon your part require you to approach that track more carefully, being more upon your guard in that particular, than if you were driving down upon a track in an open country, where your sight is unobstructed, and where you can see a long distance, and be satisfied in that way that there is in fact no train approaching close to you? If, however, the obstructions are of such a nature that quite a distance before you reach the track you cannot see a train, what assurance have you, as you approach the track, that a train may not be coming there? The law does not say absolutely that you should stop your horses, or that you should not stop your horses. It says that you must do whatever ordinarily prudent men should do under the circumstances that surround you at that time, in order that you may fairly ascertain whether, in the exercise of reasonable care upon your part, you can pass upon that track in safety. The law imposes upon you the duty of using the same degree of care that the railroad company is expected to exercise for your own protection; and if you fail in doing that, and drive upon the track, and you are injured, and your negligence in that way contributed to your injury, you cannot recover from the railroad company, even though the railroad company may be negligent in the management of its train. Then we would have a case where the negligence of the two parties contributed to produce the accident, and, as I have said, in that case neither party can recover from the other.

Now, gentlemen, the evidence in this case shows that the deceased, Miss Lapsley, was in a wagon, driven by her brother, and that there was one or two other members of the family in the wagon. The evidence has shown you the facts and circumstances as to how they came to be there; how they passed down on Leech street, and drove towards this crossing, and, as the horses and wagon passed over and upon that track, that they were struck by a train or locomotive upon the defendant's railway;

that Miss Lapsley was thrown out of the wagon, and received the injuries that caused her death. There is no dispute over those facts. The question is, on this defense of contributory negligence, whether or no proper care and prudence was or was not exercised in the manner in which that wagon approached that crossing. You have had before you, gentlemen, the evidence that shows what the circumstances were. Now, the first question for you to determine under the evidence is whether or no the parties who were in charge of that wagon approached that crossing using due and proper care,—that amount of care and prudence which the facts and circumstances that surrounded them at the time required at their hands. The whole evidence is before you. The rule of law is that persons are required to use ordinary prudence—ordinary care—for their own protection, and that one is not justified in driving down recklessly or carelessly without exercising a lookout, to use the senses of sight and hearing to the best ability that the circumstances surrounding will permit at the time. He must do that, and, if he fails in doing that, he is guilty of negligence. Now, then, what do you say under the facts as developed by the evidence in this case? Was or was not due care and prudence exercised in the mode in which that wagon was driven down to and across the track of the defendant company? If it was,—if due care was exercised,—why then the defense of contributory negligence is not made out; the burden of establishing it being upon the defendant. If the evidence fails, therefore, to satisfy you that due care,—or, rather, if this defense is not sustained by a fair and reasonable preponderance of the testimony, the burden being on the defense, then the defense of contributory negligence fails. That is, I mean to say if, under the evidence in this case, you are not fairly satisfied that there was a lack of the exercise of proper care and prudence and foresight on the part of those having charge of that wagon, why, then, you cannot say that this charge of negligence is made out in the mode in which the wagon approached this crossing and passed in front of the train. If there was no negligence, then in that there was no contributory negligence, and there is no defense then to the claim of the plaintiff, providing you find the other issues for the plaintiff. If, however, gentlemen, you are satisfied that in the mode in which the wagon was driven down to this crossing, and in front of the train upon the defendant's road, there was negligence; that the parties in the management of that wagon did not use due care; that, failing to exercise the care and skill and foresight that the law imposes upon them, the wagon was carelessly or recklessly driven upon that track when that train was approaching, and under such circumstances as that it would be apparent that there was danger of accident,—then the question arises whether or no the deceased is or is not to be held liable for the consequences of that negligence.

Some discussion has been had in this case in regard to the negligence on the part of the driver, and the relation that he maintained to the deceased. The uncontradicted evidence in the case shows that the wagon was driven by the brother, and upon the part of

the defendant company it is claimed that the negligence of the brother is, as a matter of law, to be imputed to the deceased. Now, there are certain circumstances, gentlemen, in which as a matter of law the negligence of a driver of a carriage in that way may be imputed to another person who occupies the vehicle with him; as, for instance, a father is driving, and has a child in the carriage, or a husband is driving, and has his wife there with him, or a guardian is driving with a ward that he has under his care. The relations that exist between the parent and child, and husband and wife, or guardian and ward are such that the law may impute as a matter of law the negligence of the father or husband or guardian to the wife or the child or the ward, because there is a relation there existing where the one controls the other, and where ordinarily, in the ordinary affairs of life, we recognize the fact that the one trusts the other, and relies upon the other for protection; that is, a husband exercises protection, and the wife looks to the husband for protection. So in the case of the child with the parent, and so in case of the ward with the guardian. Again, there may be the relation of master and servant, or principal and agent, which may exist under such circumstances as that the negligence of the driver would be imputed to the master. For instance, you own a team. It is yours. You have a man that is your driver. You are going out with him, driving along the highway. He is under your control. He is bound to obey your directions that you give him. You have the right of control and the power of control over him. You approach a crossing, and he is driving, and you are in a position where you can supervise and control him. Now, then, if you allow him to drive negligently and recklessly down upon the railroad track without stopping, if that would be required, or without exercising proper care, why, then, the negligence of that driver is imputed to you, because he is your servant, because he is under your control and under your management, and you have opportunity of controlling and managing him. Under those circumstances and in that case the law would impute to the master the negligence of the servant, and if an accident happened, and the master is injured, he cannot recover.

There may be other circumstances, gentlemen of the jury, in which it becomes a question of fact to determine whether a party is or is not to be held liable for the negligence of another one who accompanies him. If there are a number of us together in a common enterprise, and we are in a carriage or wagon, and one is holding the reins and driving, and the others have the right of control over him, and in fact exercise it over him, although this relation of husband or parent or guardian or of master and principal may not in fact obtain as a matter of law, yet, if the relation is such that a person does in fact have the right of control, and does in fact exercise the right of control, then a jury would be justified in finding that the negligence of the driver would be imputed to the other, but would not be justified in imputing it without the parties in the particular instance did in fact exercise this right of control under such circumstances as that it would justify you in finding that the driver was

under the control of the other party.    Now, take the facts of this case.
The relation here was that of brother and sister.    The evidence shows
that the sister who was killed was older than the brother.    They were
both of mature age.    The evidence shows that the sister was accustomed
to manage affairs for herself; that to a greater or less extent she was
in the control or management of her father's farm or business before his
death, and after that she was appointed administratrix of his estate.
Now, under those circumstances, is there anything to show that the
brother exercised over her a control, or owed her a duty of protection
and care, such as a husband would ordinarily exercise over a wife, or a
parent over a child?    It seems to me, gentlemen, that there is nothing
in the case that will justify you in finding that—there is nothing here
that would tend to show that—simply the relationship of brother and
sister—nothing under these circumstances that would justify you in
finding that the brother controlled the actions of the sister, or the sister the
actions of the brother, in such sense as that the negligence of the one would
be imputed to the other as a matter of law.    Now, then, what is the fact?
It may be that this sister did exercise a control over the management of the
wagon.    If the evidence satisfies you, in the driving of the wagon and in
the carrying out of the business in which they were engaged, that Miss
Lapsley did exercise control over the management of it, then, of course, that
would justify you in finding that if there was negligence in the manage-
ment of the wagon, and she in fact exercised a control over it in that sense,
and there was negligence upon the part of the driver, that would justify
you in finding as a matter of law that the negligence of the brother was to
be imputed to the sister; but you must be satisfied from the evidence in
the case that it was an actual control upon her part; that she stood in
such position that she could and did in fact exercise a control and
management and direction over it, so that you can say from all of the
evidence in the case that she exercised a control over the mode in which
that wagon was driven down to the crossing, in order to impute to her the
negligence of her brother.    If you find that the brother was negligent in
the mode in which he drove that wagon upon that track, so that, if he
had been injured, and he brought a suit to recover damages, he
would be defeated by reason of his contributory negligence, then that
negligence upon his part will defeat the right of recovery in this case,
providing you find that the sister, Miss Lapsley, who was killed, exer-
cised a control over the management and driving of the wagon in such
sense that she should be held responsible for what in fact the brother
did; but, unless that actual control existed, then you would not be jus-
tified in finding that you could impute to her the negligence of her
brother, if you find such negligence did in fact exist.[1]

If you find, gentlemen, however, that the circumstances were such

[1] The following authorities are cited in support of the doctrine contained in the in-
structions in reference to imputed negligence:   Little v. Hackett, 116 U. S. 366, 6 Sup.
Ct. Rep. 391; Noyes v. Boscawen, 64 N. H. 361, 10 Atl. Rep. 690; Nesbit v. Town of
Garner. 75 Iowa, 314, 39 N. W. Rep. 516; Robinson v. Railroad Co., 66 N. Y. 11; Rail-
way Co. v. Creek, (Ind. Sup.) 29 N. E. Rep. 481; Cahill v. Railway Co., (Ky.) 18 S. W.
Rep. 2; Randolph v. O'Riorden, (Mass ) 29 N. E. Rep. 583.

that negligence of the brother, if any existed, is not to be imputed to the sister, if the brother did not represent the sister in driving and in the management of the wagon, and, if she exercised herself no control—no direct control—over the brother, then she was not freed in law from the duty and obligation that was upon her of exercising for her own protection due care and prudence when she approached that crossing. You see, it will not do to hold that the sister was entirely freed from the exercise of caution and care for her own protection because the brother was driving the team, and then turn around and hold that she is free from the consequences of that brother's negligence because he drove the team; that cannot be done. If the sister was there in an independent relation, having no control over the brother, so that his negligence could not be imputed to her, then she simply stands there as any other citizen would, charged by the law with a duty and obligation of exercising due care for her own protection. Determine the question of contributory negligence upon what she did or may have omitted to do. Now, she being in that wagon, with the opportunities of seeing, according to the testimony, the wagon being an open wagon, being driven down towards that crossing, what did common prudence upon her part require her to do? She must exercise,—the law says she must use ordinary care and prudence,—exercise her senses of sight and hearing, as to whether or no the train was approaching, for her own protection. She is not justified in driving or permitting herself to be driven recklessly or carelessly upon that track, and thereby subjecting herself to danger by an approaching train. She must exercise due care and prudence upon her own part for her own protection. If she did do that, and the accident happened, then the charge of negligence against her is not made out. If she failed to exercise proper care and a proper lookout for herself, and failed to do that, and the accident happened thereby, her own neglect contributing to it, then the defense of contributory negligence would be made out against her, and your verdict would have to be for the defense.

You have got to apply these general rules that I have given to you in the exercise of sound common sense, with the facts and circumstances that are developed in the evidence. All that the law can do is to give you general rules, and it is for the jury to apply those rules of law with reference to the facts and circumstances as they are developed in each particular case,—as those facts and circumstances are brought before you in the evidence in the case. Upon this charge of contributory negligence, as I have said to you, a duty and obligation would be upon this deceased, either through herself or her brother, if she had control over him in the management of that wagon, so that he was her representative in that particular, to exercise due care in the approach to that crossing; and, if he was her representative, and she had control over him, so that his negligence could be imputed to her, and he was negligent, then a recovery cannot be had in this action. Or, on the other hand, if the relation and position that the parties occupied to each other was not such as that the negligence of the brother could be imputed to the sister, then the negligence of the brother would not

defeat the right of recovery. The right of recovery would not be then defeated, unless you find under the evidence that the sister herself was negligent. As I have said to you, under those circumstances the law charges the sister with the duty of exercising due care for her own protection, and to exercise her senses of hearing and seeing, in view of the circumstances that surrounded her when she was thus being driven towards that crossing. If, under the instructions that I have given you, you find that the charges of negligence in any one of the particulars that I have named to you are not made out against the defendant company, or if, in other words, you find that there was no negligence upon the part of the defendant company, then, of course, your verdict will be for the defendant. If, on the other hand, you find in any one or more of the particulars that I have named to you the defendant company was negligent, and that negligence aided or was the proximate cause in producing the accident, then your verdict would be for the plaintiff, unless the defense of contributory negligence is established. But if the defendant was negligent, and the deceased was negligent, or was responsible for the negligence of her brother, and he was negligent, and that negligence aided in causing the accident, then the plaintiff cannot recover, because the defense of contributory negligence would be established.

If upon the issues you find for the plaintiff, your next duty will be to determine the amount of damages. In cases of this kind, gentlemen, the rule is compensation for the pecuniary loss that is caused to the estate of the deceased by the death of the party. You are not entitled, in cases of this kind, under the law, to take into account the injury to the feelings of the members of the family or the relatives that are left. The law does not attempt to weigh that, or give damages therefore. The measure is the pecuniary loss caused to the estate of the deceased party. Now, that is a money loss. Of course, it is impossible for testimony to be brought before you to show the exact amount of that pecuniary loss; that is to be intrusted to the good common sense and good judgment of the jury; but that is what you are to allow. The theory is this: that, when a person is killed, then the estate suffers a loss in money,—what the person may accumulate had he continued to live for the probable extent of his lifetime. The Carlyle tables have been admitted before you, showing the expectancy of life of the party who was killed,—I believe, some 22 years, or a little over. Remember, gentlemen, that you are not to assume it as a fact that Miss Lapsley would have lived 22 years, and then figure up what she might have earned in 22 years, and allow that as damages. That is not the rule, because you know these tables are merely based upon the average expectancy. Notwithstanding her expectancy of life would be 22 years, and although this accident might not have happened, she might have lived only a year; she might have died from a variety of causes, and she might have lived longer than her expectancy. Therefore, all you can do in a case of this kind is to give weight to the probabilities. You know that the probabilities are that a person who is young will live

longer than a person who is old. The older we get, the more certain you know we are approaching the time of dissolution, and that is true in a general sense. You take into account, therefore, the age, the health, the strength of the party, and the ability to earn money, as it may be developed in evidence before you, and fix such fair sum that, being now paid, and paid in a lump, and being freed from all the contingencies and uncertainties that inhere in human life, will fairly compensate the estate of the deceased for what the estate has been deprived of in the way of accumulations the party might have made had they lived. You cannot figure that out in a mathematical way. You can only take the reasonable probabilities, and that must be determined by the jury in the exercise of good common sense and judgment on your part.

Verdict and judgment for plaintiff for $1,000.