THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD
COMPANY, PLAINTIFF IN ERROR, v. JOHN A. LEAMAN,.
DEFENDANT IN ERROR.

1. The ninth section of the "Act respecting railroads and canals" (*Rev.,*.
*p.* 910), provides that every railroad company shall cause to be placed:
upon some part of every locomotive engine used by any such company
a bell of a weight of not less than thirty pounds, or a steam whistle·
which can be heard distinctly at a distance of at least three hundred
yards, and shall cause such a bell to be rung or steam whistle to be·
blown at a distance of at least three hundred yards from highway
crossings until such crossings are passed.
2. If there is a bell on an engine of the statutory weight, and it is rung
in the manner required, then, so far as respects the giving of audible·
signals before reaching a public highway crossing, the company has
performed its duty, whether the signal so given is heard or heeded or·
not by a person crossing the railroad track on the highway.

On error to the Supreme Court.

Leaman, the plaintiff below, brought an action against the
New York, Lake Erie and Western Railroad Company for
damages for injuries to two horses and a wagon.  The team,
driven by a servant of the plaintiff along a public road, was
crossing the track of the defendant, when a locomotive struck
the horses and wagon.

At the trial it was contended that there was no negligence
imputable to the servants of the company by reason of which
the injury occurred.  To the charge of the trial justice in
respect to the conduct required of those operating the train
certain exceptions were sealed and errors assigned.

The portions of the charge to which these exceptions apply
are the following: "The trial justice, after charging the jury
that there was a duty resting upon the servants of the com-
pany to blow a whistle or to ring a bell continuously for nine
hundred feet before reaching a crossing, proceeded to charge·
that it was the duty of those in charge of the train to keep a
lookout for travelers who might be crossing the track without

being cognizant of the coming of the train, and to give an additional signal in case they discovered that the traveler was likely to come on the track and be injured."

In addition to this requirement another was added in these words: "It might be that under certain circumstances the law would require still more than I have already intimated from the persons running the trains. If, for example, it was very foggy, so that the train could not be seen at a great distance by travelers on the highway, then it might be the duty of the persons having the train in charge, beyond the ringing of the bells and beyond those of looking out, to give additional signals with their whistles; for it may be that the jury will think that the mere ringing of the bells does not carry the sound far enough, especially in foggy weather, to warn travelers on the highway, and that, under these circumstances, an additional signal by blowing a whistle, even when danger is not apparent, should be given."

Again, the justice charged: "You are to say whether the exercise of reasonable care on that particular day and for that particular crossing, in view of the condition of the weather, required additional signals to be sounded, but on this question I do not decide. I leave it for you to decide. You are to say whether the exercise of reasonable care required some further signals than the ringing of the bell for nine hundred feet and the looking out and the alarm given when danger was apparent."

For the plaintiff in error, *Cortlandt Parker, Jr.*

For the defendant in error, *Robert Williams.*

The opinion of the court was delivered by

REED, J.  The ninth section of the "Act respecting railroads and canals" (*Rev., p.* 910) provides that every railroad company shall cause to be placed upon some part of every locomotive engine used by any such company a bell of a weight of not less than thirty pounds, or a steam whistle which can be heard distinctly at a distance of at least three hundred

yards, and shall cause such bell to be rung or steam whistle to be blown at a distance of at least three hundred yards from highway crossings until such crossings are passed.

This act, it is perceived, imposes a duty upon a railroad company to do, by their agents in charge of a train, one of two things for the purpose of warning travelers upon highways of the approach of a train—either a whistle which can be heard the required distance is to be blown for at least three hundred yards before crossing until the crossing is effected, or, in default of the blowing of such whistle, a bell of the required weight must be rung for the same distance in the same manner. The question is whether a company which, by its agents managing a train, has executed this statutory duty, has performed its whole duty in respect to an audible warning of the approach of the train.

There can be found in the decided cases considerable judicial sentiment in favor of the view that a prescribed statutory duty is only cumulative. It is meant by this that, aside from the statute, the common law imposes a duty upon the managers of any dangerous machine to employ such precautions against harm to others as is commensurate with the danger. That, therefore, railroad companies were required by the principles of the common law to use all reasonable signals and appliances to warn and protect persons who would be likely to be injured from such danger; and the sentiment is expressed that where the legislature has required of a company that it should adopt a particular method of protecting the public against injury, that such requirement does not mean that conformity to it is the entire measure of the company's duty. It has been held that circumstances may arise where additional warnings or added safeguards become reasonable; and that this question of reasonableness is one to be left to the determination of the jury.

Questions touching the duty of extra statutory care have arisen in cases where a crossing has been accused of possessing unusual features of danger. In such cases it has been held that the company is under a duty to maintain flagmen or gates

at the crossing. But this duty only arises when this peculiarly dangerous feature is in consequence of the acts of the company itself in constructing its road or buildings.

The rule is stated by the Chief Justice, in the case of the *Pennsylvania R. R. Co.* v. *Matthews*, 7 *Vroom* 531, in these words : " If a railroad, for its own convenience, curves its track as it leaves a deep cut, within a few feet of a highway, and also sees fit to put up buildings close along such track, and by these means, or either of them, heightening the danger in the use of such highway, it seems to be very clear that such company must be held to have taken upon itself the duty of averting such danger by the employment of every reasonable precaution within its power. On such occasions as this, or whenever the situation is embraced within the principle stated, the presence of a flagman or some equivalent safeguard can be demanded of the company. The rule is, as I understand it, that when the company has created extra danger it is bound to use extra precaution."

Aside from the instances where the requirement of gates or flagmen is imposed upon the company by reason of their conduct in constructing their road or buildings, there is no duty in favor of travelers upon highways greater than the statutory prescription. I quote again from the leading case of Pennsylvania R. R. Co. *v.* Matthews, decided by this court. The Chief Justice remarks : " I quite agree to the remark made by one of the English judges, that the question whether flagmen are to be required to be kept at every cross-road, is not to be left to the caprice of juries. The statute which confers upon a railroad the right to make a track and work it, by necessary implication subjects the public to the ordinary risks attendant on the exercise of the privileges thus granted. Under usual circumstances, in the open country, they can run as many trains, and at as great a rate of speed, as are consistent with the safety of their passengers. They are not called on to keep flagmen, under ordinary circumstances, at cross-roads, nor to give any other notice of the approach of their trains than those signals that are prescribed by statute.

If greater safeguards are requisite for the safety of the community, and those public agents are to be put under greater restriction in the exercise of their franchises, such contrivances must proceed from the legislative and not from the judicial power."

The aspect of this case does not involve any question of gates or flagmen. There was no contention in the case, so far as appears, that they were required, nor is there anything in the circumstances of the case that would permit such a question to be left to the jury. The question, therefore, is whether a road, conditioned as railroads usually are in respect to highway crossings, can be charged with any duty other than enjoined by the letter of the act. It is perceived that the legislature has prescribed what, in its judgment, it deems a warning sufficient to arouse the attention of passers upon the highway; a whistle that can be heard three hundred yards, or a bell of at least thirty pounds weight is, in the judgment of the legislature, an adequate warning for its purposes, if used continuously for a distance of three hundred yards before the crossing is reached. This is a standard by which those conducting trains and managing locomotives can regulate their conduct. If additional and varying duties are to be imposed upon those persons by meteorological considerations—whether the wind is blowing in one direction or another, whether it is cloudy or clear, rainy or foggy—and all these considerations are to be left to the caprice of the jury, it places the managers on trains at a disadvantage never contemplated by the legislature. The legislature has the right to prescribe the conditions under which these companies shall run their trains. The method of structure, the location of the tracks, the protection against communication of fire, the signals of the approach of trains, are all within the legislative discretion. When the company and its agents conform to such legislative directions, they are within the protection of the law.

In the present case, assuming that the bell was rung continuously for three hundred yards before this train reached the crossing, the suggestion that the company could be visited

with damages for not giving an additional or a different audible warning from that prescribed by the statute, was, I think, an error.

Although the duty of a railroad company, respecting gates and flagmen, has been mentioned, it is not intended that any inference shall be drawn from such remarks that the question of placing gates or posting flagmen at a crossing has any bearing on the question under discussion. In my view, it does not matter whether the conduct of the company, in constructing its road or obstructing a view of it, imposes upon them the duty to maintain such flagmen or gates so far as concerns the matter now under consideration. Where the legislature has indicated what shall be done by a company to accomplish a specific purpose, it is no longer an open question whether the legislative requirement is the best or is adequate for the purpose. If the legislature has prescribed that, in certain cases, gates of a certain construction shall be placed across streets, a strict conformity with such regulation would be a full answer to a charge of negligence. If the same authority enjoined that, at certain places and at certain hours, a flagman should be kept stationed, a compliance with such a rule would equally relieve the company from legal liability for not keeping such watchmen at such points at other times. So when the legislature has said that audible signals of the approach of a train shall be given in a certain way, it cannot be left to the judgment of the jury whether other audible signals should have been given so as to accomplish the purpose designed to be effected by the legislative regulation. When the prescribed audible signals are given in conformity with the statute, whether they are heard or heeded by a traveler crossing the track or not, the company is absolved from negligence so far as concerns this kind of audible warning of the approach of its trains. The correct rule is, in my judgment, laid down in the case of the *Chicago, Burlington and Quincy R. R. Co.*, 110 *Ill.* 521.

Judgment of the Supreme Court is reversed.

*For affirmance*—BOGERT, CLEMENT, KRUEGER.    3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, MAGIE, REED, VAN SYCKEL, BROWN, SMITH.    8.