WEST JERSEY RAILROAD COMPANY, PLAINTIFF IN ERROR, v. ABBOTT ET AL., DEFENDANTS IN ERROR.

When the legislature has authorized railroad companies to use the dangerous element, fire, for engendering steam for the propulsion of trains, and have enacted regulations in respect to the precautions to be taken to prevent the escape of fire from the smoke-stacks of their engines—*Held*, that such legislative regulations define and limit the duty of the companies in respect to the precautions required against such escape of fire; *held further*, that it is error to permit a jury to determine whether or not, on account of excessive drought rendering the communication of fire more easy, it was the duty of such companies to take such care as would be sufficient to prevent the escape of any fire from the smoke-stacks of their engines.

On error to the Supreme Court.

For the plaintiff in error, *Joseph H. Gaskill.*

For the defendants in error, *David J. Pancoast.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.  The writ of error in this cause brings up for review a judgment of the Supreme Court in favor of defendants in error, and against plaintiff in error, in an action of tort for the burning of certain woodlands of defendants in error by fire alleged to have been started by a locomotive operated by plaintiff in error.

It is deemed necessary to consider only one of the numerous assignments of error.

From the evidence contained in the bills of exception, it is clear that, at the time the fire was claimed to have been communicated from the company's locomotive, there had been a protracted and excessive drought, and that the herbage and trees near the railroad were in a condition peculiarly and unusually ready to take fire.

In dealing with this phase of the case, the trial judge used this language in his charge to the jury : " Is a company during an exceedingly dry season, with grass, herbage, leaves and the earth itself all along its route parched by an unusually long period of drought and heat, negligent in allowing its spark-arrester and ash-pans   *   *   *   to throw fire at all ?"

To the substantial part of this portion of the charge, the plaintiff in error prayed an exception, which was duly allowed.

It is obvious that the submission of that question to the jury, by implication, permitted the jury to find that if, under the circumstances occasioned by the excessive drought, the railroad company allowed any fire at all to escape from the spark-arrester or ash-pans, it might be found to have neglected a duty which devolved upon it.  Upon this plain implication, this part of the charge is open to review.

But it may be properly added that the learned judge did

not leave his instruction to implication, for he added in the same connection: "Although the company had the right to use fire by law, * * * is it, in your judgment, its duty in times of great danger, by reason of drought in localities through which it travels, to exercise increased or sufficient care to prevent fire escaping from its engines? * * * If, in your judgment, the company was negligent in allowing fire to escape at all from its engines in such a dry season, * * * and if, in your judgment, it should have exercised increased care or sufficient care in such a dry season and failed to do it, and was, therefore, negligent, * * * then the statute referred to by defendant does not protect the company from liability for originating the fire, &c."

It will be perceived that the question presented by the exception is whether a railroad company authorized by law (as it appeared this company was) to operate a railroad for the transportation of passengers and freight, may be held liable for injuries occurring from fire communicated by its engines, if, in the judgment of a jury, it was its duty, because of an excessive drought and the consequent danger of communicating fire, to take sufficient care to prevent any escape of fire whatever from its engines.

The question, in my judgment, admits of but one answer, and that is, that no such duty devolves upon a railroad company or can be imposed upon them by the finding of a jury.

Railroad companies have authority to use the dangerous element of fire in the propulsion of their trains. The danger is in the escape of the fire they are permitted to use, upon adjoining lands, to the destruction of property thereon. In the absence of statutory regulations in respect to the precautions to be taken by railroads against such danger, doubtless, the companies using, though by authority, the dangerous machines would, upon the principles of the common law, be under a positive obligation to employ all reasonable precautions against doing harm thereby to others. But in that case a requirement that a railroad company should, in times of excessive drought, absolutely prevent all escape of fire from

its engines or be liable for the consequences, would be not a reasonable, but an unreasonable, rule of precaution, for it seems that no device has yet been invented that will absolutely and at all times control the escape of sparks capable of igniting inflammable matter. Such a rule, therefore, would compel the companies either to abandon their duty to the public in running their trains or be answerable for every fire communicated, no matter how cautious they had been in using the best practicable means to prevent its escape.

But statutory regulations on this subject have been made. They are contained in sections 13 to 16 of "An act respecting railroads and canals," approved March 27th, 1874. *Gen. Stat., p.* 2668. By section 13, which was originally adopted in 1865, railroad companies were required, in general terms, to take and use all practicable means to prevent the communication of fire from their engines. By section 15, which came into our legislation in 1873, it was made their duty to place on the smoke-stack of every engine a screen, so as to prevent, as much as practicable, the escape of fire. By section 16, proof that injury was done by fire communicated from an engine is made *prima facie* proof of a violation of the regulations of the statute, but subject to being rebutted by evidence that all practicable means for preventing such communication had been taken and used.

When the legislature enacts regulations in respect to any precaution to be taken in the use of a dangerous instrumentality by those whom it has authorized to use it, those regulations define and limit the measure of duty in respect to that particular sort of precaution. The statute which we have had under consideration also enacts that railroad companies shall give certain specified audible signals of the approach of its trains to the crossing of a public highway. It was settled in this court that the regulations in respect to audible signals were exclusive, and if obeyed, would exonerate a railroad company from liability for a collision at a crossing arising from a failure to hear such signals, and that it was erroneous to permit a jury to determine whether or not, on account of

the prevalence of a dense fog or other impediment to sight and sound, other audible signals ought not to have been given. *New York, Lake Erie and Western Railroad Co.* v. *Leaman,* 25 *Vroom* 202; *Hackett* v. *New York, Lake Erie and Western Railroad Co.,* 29 *Id.* 4.

In the case before us the legislature has prescribed what duty a railroad company must perform in respect to the escape of sparks from the smoke-stacks of its engines. The prescribed duty does not require the company, at any time, to absolutely prevent the escape of such sparks, but only to take and use all practicable means to that end. Proof that they have taken and used such means furnishes a defence in that respect. It is obvious that to permit a jury to find that a railroad company was, at any time, under a duty to take sufficient care to prevent the escape of any fire at all, is incongruous with the regulations of the legislature and at variance with the doctrine of the case last cited.

Without examining the other assignments of error, the judgment must, for the error above pointed out, be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON. 12.