JOSEPHINE KYLE, ADMINISTRATRIX, v. LEHIGH VALLEY
RAILROAD COMPANY.

Argued February 27, 1911—Decided July 5, 1911.

1. The ordinary duty of a railroad company with respect to the
precautions to be used when its road crosses a public road is
regulated in this state by the legislature, who, by granting to
such companies the right to cross such roads at grade, coupled
with the legislative requirement as to the signals to be then
given, has subjected the public to the risks ordinarily attendant
upon the exercise of the right so granted, without other protec-
tion than that afforded by the signals so prescribed; it is only
when the company has created extraordinary dangers that
render a crossing so hazardous that prudent persons cannot
use the public road in safety even if such statutory signals be
given, that precautions other than those prescribed by the legis-
lature must be used. Hence to charge the law to be that "if
any extraordinary dangers are created the company is bound to
use extraordinary precautions" is erroneous since it leaves out
an essential part of the law by which its application to the
given case can alone be tested.

2. *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Vroom* 531, applied.

3. Where the position taken by a party at the trial is that a cer-
tain point should not be submitted to the jury, he is not obliged
to provide his adversary or the court with his idea as to the
proper way to submit such point; and his right to review the
charge upon such point is not so conditioned.

On rule to show cause.

This rule reviews a verdict rendered at the Somerset Cir-
cuit in which there was a finding by the jury in favor of the
plaintiff for the sum of thirty-five thousand ($35,000) dol-
lars as damages alleged to have been sustained by the widow
and next of kin of Robert H. Kyle. The deceased was killed
in a crossing accident that occurred early in the evening of
April 9th, 1910, near a station known as Hillsboro, in Som-
erset county, where a highway crosses the main line of the
defendant's railroad. West of this highway and on the
northerly side of the railroad, the defendant's property ex-
tended about eighty feet northerly from the most northerly

rail to a fence, and the defendant had erected and maintained on the property (and between the highway and the direction from which the train which struck Mr. Kyle approached) a passenger station, water closet, tool house and cattle pens, and had permitted to grow certain trees and shrubs. There were gates at the crossing, but at the time of the accident they were not being operated.

Two grounds of recovery were alleged by the plaintiff—*first*, that the employes of the defendant neglected to give the statutory crossing signals, and *second*, that the defendant, by its method of constructing and maintaining the tracks, created a condition of extraordinary danger, which required some warning of the approach of trains in addition to that prescribed by the statute. The case was submitted by the trial judge to the jury on both of these grounds, and there was a general verdict in favor of the plaintiff.

On behalf of the defendant on this rule the following points were submitted:

*First.* The clear weight of the evidence shows that the statutory signals were given.

*Second.* Contributory negligence on the part of the deceased was conclusively shown.

*Third.* The situation was not one of extraordinary danger requiring extra care on the part of the railroad.

*Fourth.* There was material error in the charge.

*Fifth.* The damages were excessive.

Before Justices GARRISON, PARKER and VOORHEES.

For the plaintiff, *Theodore Rurode* and *William D. Edwards.*

For the defendant, *Gilbert Collins.*

The opinion of the court was delivered by

GARRISON, J. Without regard to the weight of evidence as to the giving of the statutory signals or the propriety of submitting to the jury the question of contributory negligence,

this rule to show cause must be made absolute. The negligence of the defendant was submitted under an erroneous instruction as to its duty to use precautions other than those required by the statute. Upon this point the charge was as follows:

"The law has established the rights of the railroad company as to these crossings in certain respects. Many years ago a statute was passed providing that where a railroad crosses a public road at grade, and it is nothing but an ordinary grade crossing, if the engineer blows a whistle or rings a bell commencing nine hundred feet from the crossing and continues either one or the other until the crossing is passed, then the railroad company has performed its duty, and although an accident might occur, yet no liability is imposed upon the railroad company if that duty has been discharged.

"But there is another rule which our courts have also established, and that is this, that where there are dangers created at a railroad crossing by the railroad itself, either by the erection of buildings or by allowing cars to remain at the crossing so as to obstruct the view—if any extraordinary dangers are created, then they are bound to use extraordinary precautions to protect the public against the necessary dangers of that crossing.

"So, the first question, it seems to me, that you will have to decide in this case, will be whether or not this was merely an ordinary railroad crossing. If it was, if it was not surrounded with any extraordinary dangers created by the railroad company itself, then, of course, they are only bound to comply with the law, to ring a bell or to blow a whistle."

If the statutory signals were given the jury were instructed that a further question was whether or not "there were extraordinary dangers created at the crossing by the railroad company. It appears that there was a line of trees maintained there upon the railroad property, and also the station house which obstructed in some degree the view down the track on which the train came which caused this accident.

"It also appears that the railroad company had recognized the necessity of having extraordinary precautions there, because they had erected gates. Those gates were not in use

at night; but they were in use, under the evidence, from half-past six in the morning until half-past six at night. That is a circumstance that you also have a right to take into consideration in saying whether or not they were discharging their duty to the public in maintaining the gates in the day-time and not maintaining them in the night.

"Now, if the circumstances surrounding that crossing, the obstructions which were put there by the railroad company, rendered it necessary for them to use extra precautions in the day-time, then it is for you to say whether those precautions should not be extended into the night. It would seem, under general principles, that there was really more danger at night than there would be in the day-time; but still it is for you to say whether you think that there were extraordinary dangers created at that crossing by the railroad company which made it necessary for them to exercise extraordinary precautions, and that goes to the question of negligence of the company."

If this instruction meant that the negligence of the defendant was established by the circumstance that the gates that were maintained by day were not maintained at night, it amounted to a direction of a verdict for the plaintiff, for the fact was not disputed. In this aspect it was clearly erroneous. If, on the other hand, the circumstance was submitted to the jury as one to be considered by it upon the question of the extra-hazardous condition created by the defendant, it was irrelevant and the instruction erroneous for reasons to be pointed out.

Regarding the instruction as intended for the guidance of the jury in applying to the testimony the rule of *Pennsylvania Railroad* v. *Matthews, 7 Vroom* 531, it was in our opinion erroneous.

In the Matthews case Mr. Justice Depue had charged the jury that extraordinary precautions were required of the railroad company only when "the use of ordinary signals would fail to give reasonable notice to the public having occasion to cross the track."

This charge was sustained by the Court of Errors and Appeals upon the expressed ground that the rule thus laid down was "that if the particular place was so peculiarly dangerous that prudent persons could not use the public road in safety unless the company employed a flagman or other extraordinary means to signal the approach of their trains, that then in such event it was incumbent on them to employ such extraordinary. means."

This quotation from the opinion of Chief Justice Beasley displays at once the rule declared and the sense in which "ordinary" and "extraordinary" are employed throughout such opinion.

The reasoning of the opinion in the Matthews case was as follows:

The legislature of this state having granted to railroad companies the right to cross public roads at grade and having prescribed the signals to be given when such crossings are approached, has subjected the public to the risks ordinarily attendant upon the exercise of the right so granted without other protection than that afforded by the signals so prescribed. The obvious presumption upon which this legislation proceeds is that, if the signals prescribed by the statute are given, prudent persons can use the public roads in safety as far as the dangers ordinarily attendant upon the exercise of the right granted to the railroad company is concerned. This legislative scheme therefore does not purport to cover those cases in which the railroad company has created extraordinary dangers that increase the risk to the public beyond the point where prudent persons, if warned by audible signals, can use the public roads in safety. Hence, a railroad company that brings about such a situation imposes upon itself the common law duty of using reasonable care to protect the public from the dangers peculiar to such situation.

The rule in question, therefore, by thus providing for two situations that are mutually exclusive, covers all possible cases, since any given case must fall within one or the other of its categories, in that it must either be a case in which prudent persons can use the public road in safety if the statutory

signals are given, or else one in which, even if such signals be given, such persons cannot safely use such roads. The difference between the two classes of cases does not consist, as is too often assumed, in the mere fact of an additional element of risk created by the company. Such circumstance may or may not suffice to take the case out of the statutory regulation. It is only when such added element of risk creates a condition in which, even if the statutory signals be given, prudent persons cannot with safety use the public road that such statutory regulation ceases to be the measure of the company's duty. Hence, the fact that some obstruction to vision or to hearing has been created by the railroad company does not of itself dispose of the question; such fact is indeed relevant only in so far as it bears upon the crucial question whether the defendant has rendered the use of the public road so dangerous that persons of ordinary prudence cannot use it in safety even if the statutory signals be given.

The crucial character of this question does not arise from any arbitrary or technical considerations, but, on the contrary, inheres fundamentally in the rule of law illustrated by the Matthews case, and in fact furnishes the test provided by such rule for determining whether, in a given case, the duty of the railroad company is to be measured by the legislative enactment or by some other rule of law. Whatever therefore be the precise form of language employed in a charge, until this question has been in substance submitted to the jury, the rule of law we are discussing has not been adequately or correctly charged. Such question is not alone whether new elements of danger have been added by the railroad to those that previously existed at a crossing, but whether the danger of crossing the railroad has been so increased that the statutory signals no longer afford protection to a prudent public. A single pole would be an added danger, but obviously not such a radical change of the existing conditions that the statutory regulation no longer applied. To charge the jury, as was done in the present case, that "if any extraordinary dangers were created the defendant was bound to use extraordinary precautions," was to charge therefore a part only of the legal

rule, omitting the part of it that contains the test without which a jury could have no conception of what was required of it in the premises. The charge before us in which the instruction quoted was several times repeated without material modification, was therefore erroneous both in what it charged and in what it failed to charge, and in each of these respects the defendant is entitled to take advantage of its incorrectness. The rule that was charged was not the law; and the failure of the judge to charge the law, if he submitted the question at all, is available to the defendant without a request that correctly stated the law, since the question could be lawfully submitted only in connection with the law that justified its submission.

Where the defendant's attitude at the trial is that a certain point should not be submitted to the jury, he is not obliged to provide his adversary or the court with his idea as to the proper way in which such point should be submitted.

Because of this fundamental error in the charge we have not discussed the question whether the case upon this point should have been submitted to the jury, *i. e.,* whether, as a court question, the testimony was not, under the correct rule of law, incapable of supporting a verdict for the plaintiff upon this point. That there is, in the nature of the rule we are considering, room for a preliminary court question of this character seems to be clear. Such was evidently the opinion of Chief Justice Beasley, who first formulated the rule, and the later decisions are quite consistent with that view, even if they do not expressly state it. *New York, Lake Erie and Western Railroad Co.* v. *Leaman,* 25 *Vroom* 202; *Hires* v. *Atlantic City Railroad Co.,* 37 *Id.* 31; *Danskin* v. *Pennsylvania Railroad Co.,* 47 *Id.* 660; *Horandt* v. *Central Railroad Co.,* 49 *Id.* 190; same case in Court of Errors and Appeals, *post p.* 488; *Jones* v. *Pennsylvania Railroad Co.,* 49 *Id.* 571.

The matter is referred to now that no erroneous inference to the contrary may be drawn.

For the trial error referred to the rule to show cause is made absolute.