CONRAD HOFFMANN, RESPONDENT, v. THE FITCHBURG RAILROAD COMPANY, APPELLANT.

*Accident at a railroad crossing — ringing of a locomotive bell — evidence — contributory negligence.*

As against affirmative evidence of credible witnesses of the ringing of a locomotive bell on approaching a street crossing there must be something more than the testimony of those who did not hear it ring; it must appear that their attention was directed to the fact at the time.

The fact that the witnesses who testify affirmatively to the ringing of a locomotive bell, in an action against a railroad company for negligence at a street crossing, are the engineer in charge of the locomotive, and other employees of the defendant company, is not, of itself, sufficient to discredit their testimony, although it is a fact for the jury to consider when there is any real conflict of evidence; but it cannot be said that there is a conflict when the only testimony opposed to such affirmative evidence is that of persons who did not listen or give heed to the presence or absence of the ringing of the bell.

One who approaches a place of peril, as, *e. g.*, the driver of a wagon and horses, who approaches a railroad crossing in a narrow city street, where the corner buildings come within a few feet of the tracks, must, to establish affirmatively lack of contributory negligence, be alert and vigilant in the use of his eyes and ears, and display that prudence of conduct which the situation dictates.

APPEAL by the defendant, the Fitchburg Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of Rensselaer county on the 20th day of February, 1892, upon a verdict for $3,000 in favor of the plaintiff, rendered at the Rensselaer Circuit; and from an order denying a motion for a new trial, made on the minutes of the court, in an action to recover damages for a personal injury received at a railroad crossing in a street in the city of Troy.

*T. F. Hamilton*, for the appellant.

*R. A. Parmenter*, for the respondent.

HERRICK, J.:

The plaintiff was the driver of a wagon for the delivery of beer; on the day of the accident he was out with a load of beer, consisting of some fifteen kegs, for the purpose of delivering the same to the customers of his employer; he drove down an alley or street called Green street alley, which was crossed diagonally by the tracks of the defendant; Green street alley is about twenty feet in width, the front line of the house on one corner of the alley facing defendant's tracks is about nine feet from the nearest track, and the front line of the house on the other corner of the alley and facing defendant's tracks is about thirteen feet from the nearest track.

As the plaintiff was driving down the alley an engine of the defendant was backing down the track towards the alley, pulling after it several cars, the engine was moving at a slow rate of speed.

There is some conflict of evidence as to the speed at which the plaintiff was driving, but both he and the person upon the wagon with him testify that his horses were upon a walk.

The plaintiff testifies that he did not hear or see the engine until his horses were upon the track, that then the cars were so near that he could not get back; he says when he first saw the engine it was about two rods from the crossing, he turned or swung his horses to the right, the tender of the engine, the engine being backed down, struck the rear end of his wagon, threw the plaintiff out of the wagon, broke his leg in three places and otherwise bruised and injured him.

The only negligence claimed, as I understand it, is that the trainman having the train in charge did not give reasonable warning of its approach to the crossing over Green street.  Upon that question the evidence is as follows, plaintiff's own evidence on direct-examination:

Q. Did you hear any bell?  A. No, sir.  Q. Or any warning whatever?  A. No, sir.

Upon the cross-examination:

Q. You didn't hear the bell ring?  A. No, sir.  Q. You didn't hear the whistle blow?  A. No, sir.

On the redirect-examination:

Q. Do you know whether or not there was any bell ringing? A. I know there was none ringing; I didn't hear it ring.  Q. Had

it been ringing on the engine you could have heard it? [Objected to as incompetent.]

The COURT — You may state the surroundings and then whether you did hear it or not. Q. You didn't hear it? A. No, sir; I didn't hear it.

THOMAS CUSHING a witness for the plaintiff gave the following testimony on the same point:

On his direct-examination:

Q. Did you hear any bell from the locomotive? A. No, sir. Q. Were you where you could have heard it if it had been ringing? A. I was close enough to hear it if it was rung.

Cross-examination:

Q. You don't remember hearing a bell? A. No, sir, I couldn't swear I heard a bell. Q. There was no particular reason why you should listen to a bell? A. No, sir. Q. The fact of it is you don't know whether one was ringing or not? A. I would not swear whether it was or not. Q. You wouldn't swear one way or the other? A. No, sir.

Redirect-examination:

Q. You know you didn't hear a bell? A. I wouldn't swear positively I didn't; to the best of my knowledge I didn't hear any bell.

HENRY FLETCHER, a witness for the plaintiff and who was upon the wagon with him at the time of the accident, swears· upon his direct examination:

Q. Did you hear any warning of any kind? A. No, sir. Q. Did you hear any bell? A. No, sir.

Nothing upon this point on his cross-examination.

On the part of the defendant the engineer, after testifying that he had received a warning from a switchman not to cross Fifth avenue, a street that appears to be beyond Green street, and that in consequence he slowed up his train, testified:

Q. You approached the Green street crossing? A. Yes, sir. Q. As you approached it you were going about two and a half miles an hour? A. Yes, sir, or three miles. Q. State whether the bell was ringing? A. Yes, sir, it was. Q. Who rang it? A. John Goeway, the fireman. Q. Are you sure of that? A. Yes, sir,

positive of it. Q. State whether the bell was rung continuously up to the time this wagon was struck? A. Yes, sir.

The witness was not cross-examined upon this point.

JAMES A. HOGAN, switchman of the defendant and the same one who warned the engineer about not crossing Fifth avenue, says that he signalled the engineer and that he slowed up; his switch shanty is 150 to 200 feet from the Green street crossing. Q. State whether you heard the bell on the engine ringing as it approached the crossing? A. Yes, sir. Q. Ringing all the time? A. Yes.

No cross-examination as to ringing of bell.

GILBERT DENNIKER, a brakeman on the train, after testifying to the slowing up of the train and that it was going about two and one-half miles an hour, said:

Q. State whether you heard the bell ring until they got to the crossing? A. I heard the bell ringing until he blew for brakes, and I couldn't say whether it rang after that or not.

He was not cross-examined on that question.

WILLIAM H. SLITER, a witness for defendant, who was driving a team upon Green street, approached the track from the opposite direction from which plaintiff did, and who, hearing the train approach, stopped his team about 200 feet away, upon his cross-examination answered as follows:

Q. You didn't hear any bell? A. I couldn't say, positively, I did. Q. Do you remember hearing any bell? A. No, sir; I don't remember hearing no bell.

This is all the evidence I can find in the case relative to any signals or warnings given or not given by the defendant of the approach of the train.

It will be observed that the evidence on the part of the plaintiff to show that no bell was rung, is that the witnesses did not hear it; none of them pretend to say "that they listened or gave heed to the presence or absence of that signal."

They were not "looking, watching or listening for it, their attention was not directed to the fact."

In the absence of any affirmative evidence of the fact, it would be going a great ways to hold that such evidence was sufficient to prove that no signal was given; but here we have the affirmative

testimony of three witnesses swearing positively to the ringing of the bell. There is nothing against their credibility, except that one was the engineer in charge and the others employees of the defendant; facts that are not of themselves sufficient to discredit their testimony, but, nevertheless, facts for the jury to take into consideration where there is any real conflict in the testimony; but here I cannot see that there is any real conflict worthy of the name. It seems to me to come squarely within the principle that, as against affirmative evidence of credible witnesses of the ringing of a bell, there must be something more than the testimony of those who did not hear, and it must appear that their attention was directed to the fact at the time. (*Culhane* v. *N. Y. C. and H. R. R. R. Co.*, 60 N. Y., 133; *Dyer* v. *Erie Ry. Co.*, 71 id , 228; *McKeever* v. *N. Y. C. and H. R. R. R. Co.*, 88 id., 667.)

I doubt very much whether the plaintiff showed affirmatively a lack of contributory negligence on his part. He was traveling over a street with which he was familiar. A narrow street, the buildings upon its corners within a few feet of the railway tracks where his horses would come upon the tracks almost as soon as the wagon would reach the corner. He knew he was approaching a place of peril, how perilous, from his own testimony, he could not determine by his eyesight until he was almost upon the tracks. Those who approach a place of peril must be on the alert and vigilant in the use of their eyes and ears and display that prudence of conduct which the situation dictates. (*Heaney* v. *Long Island R. R. Co.*, 112 N. Y., 122.)

The accident took place in broad daylight, and the circumstances detailed by the plaintiff and his witnesses do not, it seems to me, show that alertness and prudence of conduct on his part which, when we consider the locality, establish affirmatively the lack of contributory negligence.

For these reasons the judgment should be reversed and a new trial ordered, costs to abide the event.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed and new trial granted, costs to abide event.