WALTER M. GOODWIN ET UX., PLAINTIFFS IN ERROR, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT IN ERROR.

Submitted December 12, 1905—Decided June 18, 1906.

On the trial of an action for personal injuries the testimony, in the aspect most favorable to the plaintiff, presented this situation: The plaintiff, driving a team of mules on the public road toward a railroad crossing, with which he was familiar, made no observations to see if a train was approaching until he reached a point twenty-eight or thirty feet from the track, from which he had an unobscured view up the tracks to a curve some one hundred feet away, and where if he had seen a train approaching he would have stopped his team and have been in a place of safety, his mules not being liable to take fright by a passing train. Not seeing the train, which had not yet rounded the curve, the plaintiff drove on, and would have crossed the tracks in safety had not his mules when on the tracks come to a sudden stop, owing to a shout from a brakeman on the rear end of a train that was rapidly approaching, running backward and giving no signals. On being started up again the mules crossed the tracks in safety and the wagon so far cleared the rails that its hind wheel only was struck. *Held*—

(1) That the direction of a verdict for the defendant on the ground of contributory negligence was erroneous, the question

whether the plaintiff's wagon was struck because of his failure to exercise ordinary caution not being, under the circumstances, a court question.

(2) That in view of the positive testimony of the plaintiff that the statutory signals were not given, corroborated by circumstantial testimony, that question should have been submitted to the jury, notwithstanding the positive testimony of the defendant's witnesses to the contrary.

*Quære.* Whether the statute respecting the giving of audible signals applies to a train that is running backward.

On error to the Supreme Court.

For the plaintiff in error, *William C. Gebhardt.*

For the defendant in error, *Walter H. Bacon* and *George Holmes.*

The opinion of the court was delivered by

GARRISON, J. The plaintiffs, who are husband and wife, sued to recover damages for personal injuries sustained by the latter in a collision between the wagon in which she was seated and a train operated by the defendant. The accident happened at a public crossing and the liability of the defendant was based at the trial upon its alleged failure to give proper signals for this crossing. The trial resulted in the direction of a verdict for the defendant upon the grounds —*first,* that the testimony that the audible signals were not given, although conflicting, did not raise a jury question; *second,* that the plaintiffs, upon their own showing, were guilty of contributory negligence.

In respect to each of these grounds we think that the trial court was in error.

1. Upon the first point the testimony, viewed in the light most favorable to the plaintiff, as it must be in considering the error now complained of, presented a considerable mass of evidence, both direct and inferential, that the audible signals for the crossing were not given as required by the statute in force at the time this accident occurred, namely, September, 1902. The defendant's train, which was made

up of three passenger coaches, each sixty feet long, and three or four freight cars, was running backward toward the crossing, so that the rear end of the train was some three hundred feet nearer to the crossing than was the locomotive. Whether the statutory provision in question applies to a case of this sort is not directly raised by any assignment of error and has not been argued; but assuming that it does apply, and that the continuous blowing of the whistle and ringing of the bell constituted the whole duty of the defendant, as declared in the case of *New York, &c., Railroad Co. v. Leaman*, 25 *Vroom* 202, the testimony whether such signals were given was admittedly of a conflicting character—a conflict which the trial court decided as a question of fact upon the weight of the evidence, laying stress in so doing upon the consideration that the witnesses for the defence said that they heard the signals, while some of those upon whom the plaintiff relied merely said that they did not hear them. This circumstance apparently led the trial court to ignore the direct testimony of the plaintiffs that the signals were not given and to deny to the testimony of the other witnesses any probative force because of its negative character. This was neither the legal nor the logical effect of such testimony. The plaintiffs in their declaration alleged that these signals were not given, which was traversed by the defendant, hence it was incumbent upon the plaintiffs to establish by testimony this material allegation. Reduced to its simplest elements, the fact in issue was whether at a certain time and place certain sounds were produced. In a concrete proposition of this nature silence is as much a fact as sound; either may be the fact and the proof of one excludes the other, so that the point of difference is not in their susceptibility to proof by testimony, but in the nature of such testimony and the weight to be given to it. A sound heard by a witness includes the imperative implication that the witness was where he could hear such sounds, whereas the fact that a witness did not hear a given sound carries with it no such implication, which consequently must be supplied by other testimony, and even when such testimony is supplied the probative weight to be accorded

to the fact that the witness did not hear the sound depends upon his proximity and state of attention or pre-occupation, and all those other circumstances that render it more or less probable that if the sound had been given the witness would have heard it. It is precisely these circumstances that render the question peculiarly one for the jury. *McLean v. Erie Railroad Co.*, 40 *Vroom* 57; *S. C.*, 41 *Id.* 337.

In the present case the positive testimony of the plaintiffs, corroborated by such circumstantial testimony, raised a question of fact that could not lawfully be withheld from the jury merely because other witnesses testified positively to the contrary.

2. As to the contributory negligence of the plaintiffs, when both sides had rested, the inferences that could be legitimately drawn from the testimony were these: Just prior to the accident the plaintiffs were driving east on Bacon's Neck road toward the point where that road crosses the defendant's right of way, which it does at a slight obliquity, so that the angles formed by the two lines are more acute to the right of the road before the railroad is crossed and to its left after leaving the crossing. The right of way itself at a point about one hundred feet to the south of the crossing—that is, to the right hand as the plaintiffs were driving—curves slightly to the west, and around this curve the train was coming, running backward, as has been already described. The plaintiff's team consisted of a market wagon drawn by two mules. The road was sandy and heavy; it had rained the night before, and the mules were without shoes, so that neither the team nor the wagon made any appreciable noise. The mules were going on a slow trot. The plaintiff Walter Goodwin, who was driving, was familiar with the locality; he was seated, with his wife, upon the front seat of the wagon, the side curtains of which were down, each curtain having a window through which the driver could look without rising from his seat. As the team neared the crossing the train was also approaching from beyond the curve to the plaintiff's right, the angles between the road and the tracks being to some extent obstructed by a farmhouse and its outbuildings, and along the track by a line of

telegraph poles, and also by trees in full leaf, it being the 4th day of September. The character of these obstructions is, however, not of essential significance, as it seems to me, for the reason that the plaintiffs testified repeatedly that no attempt was made to look for a train until a point past all of these obstructions was reached, which point was from twenty-eight to thirty feet from the tracks. When this point was reached the plaintiff Goodwin took hold of the post of the wagon and pulled himself up and looked up the track to the right and saw no train, which is consistent with the physical conditions if the train had not yet rounded the curve and was running at a high rate of speed. The plaintiff's team, which had not been checked, continued on over the right of way, and had crossed it so far that the front feet of the mules had cleared the tracks and their hind feet and the front wheels of the wagon were still on the tracks when they suddenly came to a stop or halt, as the witnesses variously described it. The cause of this behavior on the part of the mules was a call or shout from a man on the rear end of the rear car of the approaching train, then about forty feet away. Up to this time the plaintiffs were not aware of the approach of the train. In this situation the plaintiff started his team up again and so far cleared the tracks that the hind wheel of the wagon alone was struck, a mark on the body of the wagon about a foot from its rear end indicating where the wheel had been forced in against it. From the conduct of the plaintiff, and also from the behavior of his team, it could fairly be inferred that the mules were gentle and not liable to be frightened by proximity to railroad trains, and that it was the purpose of the driver, when he looked out for the train before crossing the track, to stop his team if he saw the train coming, and that he would then have been in a place of safety. It is also demonstrated beyond mere inference that if the mules had not been stopped on the track no part of the wagon would have been struck. The case made by the plaintiff, therefore, was that while his team was in a place of safety he looked for a train, and seeing none left that place of safety and crossed the track under conditions that would have eventuated in safety had it not been for the stoppage of his mules upon

the track. The elements that enter into this case are essentially inferences of fact. The case, it will be observed, is not that of a driver who delays looking for a train until his team is so near the railroad track that he has to balance the risk of crossing the tracks with the danger of staying where he is. In such case the conduct of the driver in delaying observation until it was too late to be efficient for his safety of itself is an element of negligence; but if the driver's familiarity with the road and with the disposition of his team is such that he knows of a point of observation which, though near the tracks, is one where he could with safety stop his team if the result of his observation dictated such a course, his mere failure to select some other spot further from the track is not necessarily to be imputed to him as negligence—at least it is not a court question. Hence the failure of the plaintiff in such case to make earlier observations is not of controlling significance; at most the question presented is for the jury. There being in the case testimony, therefore, from which the jury might find that the plaintiff looked when at a place of safety where he intended to stop his team if he saw the approaching train, and that he did not see it, and that the physical conditions as to the curve of the tracks and the speed of the train were such as to render this possible, and that the plaintiff had time to cross the tracks in safety, and would have done so but for the stopping of his mules when on the tracks, a case was presented that should have gone to the jury, unless it was negligence *per se* for the plaintiffs not to have anticipated the shout of the brakeman that led to the stopping of the mules upon the track, which can scarcely be contended.

These considerations lead to the conclusion that the direction of a verdict for the defendant upon the ground of contributory negligence was also error for which the judgment brought up by this writ must be reversed.

*For affirmance*—THE CHIEF JUSTICE, REED, GREEN, GRAY, DILL. 5.

*For reversal*—THE CHANCELLOR, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM. 9.