Points Decided.

---

(July 2, 1909.)

ADDIE FLEENOR, Admx. of the Estate of HENRY FLEE-
NOR, Deceased, Respondent, v. OREGON SHORT LINE
RAILROAD COMPANY, Appellant.

[102 Pac. 897.]

NEGLIGENCE OF RAILROAD COMPANY—PLEADING CONCURRING ACTS OF
NEGLIGENCE—NEGATIVE TESTIMONY—OPPORTUNITIES OF WITNESS TO
SEE AND HEAR—CONTRIBUTORY NEGLIGENCE—DILIGENCE OF COM-
PANY AT STREET CROSSING—PRESUMPTIONS IN FAVOR OF DILIGENCE
FOR PROTECTION OF LIFE—NEGLIGENCE QUESTION OF FACT.

1. Where the plaintiff in an action for damages against a rail-
road company alleges several separate and independent acts of neg-
ligence as all concurring in the accident and consequent damages,
and the acts charged are of such a nature that the accident might
have occurred and the injury resulted from any one of such acts
independently of any or all of the others, it will be sufficient to en-
title the plaintiff to recover if he prove any act or acts alleged from
which the jury may reasonably believe the accident occurred and
the injury resulted.

2. As a general rule, the evidence of one who testifies to a nega-
tive is not entitled to the same weight as that of one who testifies
to a positive. This general rule, however, is subject to the exception
that where the evidence of an affirmative and positive issue neces-
sarily consists in proof that a thing did not exist or an act did
not take place, and the witness was placed under such circumstances
and was in such position that he could as readily see and would
as likely have seen or heard as the witnesses who testified that
the act occurred or the thing did exist, then the testimony of such
witness partakes of the nature of positive evidence and becomes
proof of a positive issue.

3. Where witnesses testify positively that a bell was rung and a
whistle sounded on a locomotive engine and that the engine was at
the same time displaying a headlight, and other witnesses testify
that they did not see a headlight and did not hear a bell or whistle,
and it appears from the evidence that the latter witnesses were look-
ing and listening for the train and were in a position near the
track where they could see and hear equally as well as the other wit-
nesses, the evidence of those testifying to the negative is entitled
to go to the jury and be considered by them the same as that of
the witnesses testifying to the positive.

4. Where the employees of a railroad company are running a train
over a public crossing at such a high and dangerous rate of speed

as to become within itself negligent management and operation of the train and engine, and an accident results as a consequence thereof, or while such train is being operated at such high and dangerous rate of speed, it is proper for the evidence of such fact to be submitted to the jury, and for the jury to consider the same in determining whether or not the company was guilty of negligence in the commission of the resulting injury.

5. The fact that a railway train is run at a high and dangerous rate of speed at a street crossing is no excuse or justification for a person subjecting himself to the danger and hazard of being run over by attempting to cross the track in front of such train. The same duty to observe diligence and care at public crossings for the prevention of injury rests equally and alike on both the railroad company and pedestrians and other travelers crossing a railroad track, subject, however, to that other duty of pedestrians and other travelers crossing a railroad track to look and listen for on-coming trains and to clear the track that they may pass without injury being inflicted.

6. The duty of a railroad company to ring a bell or blow a whistle in approaching a crossing is imposed by positive statute of this state, and a failure to do so is negligence *per se;* while the duty to maintain gates and station a flagman at a crossing is not enjoined by statute; still, under certain conditions and circumstances a failure to do so would constitute negligence at common law, for the consequences of which the company would be liable. Under all such circumstances the question of negligence in failing to maintain gates or keep a flagman at a crossing is a question of fact to be determined by the jury.

7. A *prima facie* presumption arises in the absence of evidence to the contrary that one who is killed while attempting to cross a railroad track at a public crossing stopped, looked and listened before going upon the track.

8. Where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fair-minded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence is one of fact to be submitted to the jury. Where upon all the facts and circumstances there is a reasonable chance or likelihood of the conclusions of reasonable men differing, the question is one for the jury.

9. Evidence in this case examined and held sufficient to constitute a substantial conflict, and properly submitted to the jury.

10. Instructions in this case examined and held to correctly state the law and that there was no error in refusing the requests of the defendant.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for the County of Canyon.   Hon. Ed. L. Bryan, Judge.

Action by the plaintiff for damages caused by defendant company running over and killing plaintiff's intestate husband.   Judgment for the plaintiff and defendant appealed. *Affirmed.*

P. L. Williams, and D. Worth Clark, for Appellant.

Failure to sound a bell or whistle, failure to have a headlight on the engine, and failure to have a watchman at the crossing are alleged as concurring acts of negligence; in such case the rule is that plaintiff cannot recover on proof of either act, but must prove the concurring acts.   (*Wormsdorf v. Detroit City R. Co.*, 75 Mich. 472, 13 Am. St. 453, 42 N. W. 1000; *Weber Wagon Co. v. Kehl*, 139 Ill. 644, 29 N. E. 714. )   Where specific acts of negligence are charged, the evidence must establish the specific negligence necessary to constitute the cause of action alleged and not merely some other cause of action.   (*Hamer v. Northern Pac. R.*, 7 Ida. 305, 62 Pac. 1028; *Miller v. Chicago etc. R.*, 76 Iowa, 318, 41 N. W. 28; *St. Louis etc. R. Co. v. Moss*, 37 Tex. Civ. App. 461, 84 S. W. 281; *Arcade File Works v. Juteau*, 15 Ind. App. 460, 40 N. E. 818, 44 N. E. 326; *Lynch v. Great Northern Ry. Co.* (Mont.), 100 Pac. 616; *Legge v. New York etc. R. Co.*, 197 Mass. 88, 83 N. E. 367; *Snowball v. Seaboard Air Line*, 130 Ga. 83, 60 S. E. 189.)

The rule is well settled that if the evidence fails to establish the theory of the complaint there can be no recovery thereunder.   (*Harris v. Hannibal etc. R.*, 37 Mo. 307; *Waldhier v. Hannibal etc. R.*, 71 Mo. 514; *Johnson v. Galveston etc. R.*, 27 Tex. Civ. App. 616, 66 S. W. 906; *Moss v. North Carolina R. Co.*, 122 N. C. 889, 29 S. E. 410; *Parrill v. Cleveland etc. R. Co.*, 23 Ind. App. 638, 55 N. E. 1026.)   It is not alleged in plaintiff's complaint that the rate of speed was the cause of the accident, and even if such were alleged, it is only alleged in reference to the F street crossing.   Affirmative

testimony that the warning was given must be accepted as proof of that fact, notwithstanding an equal or greater number of witnesses failed to notice it, from whatever cause. There is in such case no conflict of evidence as to the matter in question. The observation of the fact by some is entirely consistent with the failure of others to observe it, or their forgetfulness of its occurrence. (Citing authorities given in opinion.)

In this case there was no statute or ordinance limiting the rate of speed of railroad trains within the limits of the city of Nampa. The rule is well settled that in the absence of any statute or ordinance upon the subject the rate of speed is not negligence *per se.* (*Young v. Hannibal etc. R. Co.,* 79 Mo. 336; *Powell v. Mo. Pac. R.,* 76 Mo. 80; 8 Am. & Eng. R. Cas. 467.) Negligence cannot be inferred from speed alone where there is no ordinance or statute limiting the rate of speed. (*Warner v. New York etc. R. R. Co.,* 44 N. Y. 465; *Dyson v. New York & N. E. R. Co.,* 57 Conn. 9, 14 Am. St. 82, 17 Atl. 137.) Plaintiff did not attempt to prove that the rate of speed of this train was, under the circumstances, dangerous.

One approaching a street crossing is bound to use his senses, to listen and to look, before attempting to cross the railroad track in order to avoid any possible accident from an approaching train; if he omits to use his senses and walks thoughtlessly upon the track, he is guilty of culpable negligence; and if he receives any injury, he so far contributes to it as to deprive him of any right to complain. (*Chicago R. I. & P. v. Houston,* 95 U. S. 697, 24 L. ed. 542; *Romeo v. Boston & Maine R. R.,* 87 Me. 540, 33 Atl. 24; *Schlimgen v. Chicago, M. & St. P. R. Co.,* 90 Wis. 186, 62 N. W. 1045.) The courts hold that if the duty of looking and listening is omitted the court is bound to instruct, as a matter of law, that a verdict be returned in favor of defendant. (3 Elliott on Railroads, 2d ed., sec. 1166; *Herbert v. Southern Pac. Co.,* 121 Cal. 227, 53 Pac. 651; *Rogers v. Rio Grande W. R. Co.,* 32 Utah, 367, 125 Am. St. 876, 90 Pac. 1075; *State v. Maine Cent. R. Co.,* 76 Me. 357, 49 Am. Rep. 622; *North Pennsylvania R. R. Co. v. Heileman,* 49 Pa. 60, 88 Am. Dec. 482;

*Pennsylvania R. R. v. Beale*, 73 Pa. 504, 13 Am. Rep. 753; *Cleveland etc. R. R. v. Crawford*, 24 Ohio St. 631, 15 Am. Rep. 633; *Dascomb v. Buffalo etc. R. R.*, 27 Barb. 221; *Wilcox v. Rome etc. R. R.*, 39 N. Y. 358, 100 Am. Dec. 440; *Railroad Co. v. Houston*, 95 U. S. 697, 24 L. ed. 542; *Gothard v. Alabama etc. Ry. Co.*, 67 Ala. 114; *Illinois Cent. R. R. v. Godfrey*, 71 Ill. 500, 22 Am. Rep. 112; *Mann v. Belt etc. Ry. Co.*, 128 Ind. 138, 26 N. E. 819; *Wilkinson v. Oregon S. L. R. Co.* (Utah), 99 Pac. 466.)   A person injured upon railroad tracks can predicate no right to recover upon the absence of gates at a crossing, where he has reached the place of the accident by going upon such tracks at a place where there was no street crossing, and walking upon such tracks until he reached the place of the accident. (*Railroad Co. v. Korando,* 129 Ill. App. 620.)

Rice, Thompson & Buckner, for Respondent.

Ordinarily, when one witness testifies positively that a certain thing existed or happened, and another witness, with equal means of knowing, testifies that the thing did not exist or happen, the so-called negative testimony is so far positive in its character that a court could not say that it was entitled to less weight than the affirmative testimony. (*Riley v. Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948, and cases cited in opinion on this point.)   All evidence tending to show the condition of the track at or near the crossing, and all the surroundings, together with all the facts and circumstances with reference to the accident, was properly received and submitted to the jury under proper instructions by the court, for it was the province of the jury to determine the fact as to negligence, or lack of negligence, on the part of the defendant, and the contributory negligence, or want of contributory negligence, on the part of the deceased. (*Pittsburgh Ft. W. & C. R. Co. v. Callaghan*, 157 Ill. 406, 41 N. E. 909; *Booth v. Union Terminal R. Co.*, 126 Iowa, 8, 101 N. W. 147; *Huntress v. Boston & M. R.*, 66 N. H. 185, 49 Am. St. 600, 34 Atl. 154.)

In determining whether the deceased was guilty of contributory negligence the jury were bound to consider all the facts and circumstances bearing upon the question, and not select one particular prominent fact or circumstance as controlling the case to the exclusion of all others. (*Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485; *Bygum v. Southern Pac. Co.* (Cal.), 36 Pac. 415; *Cleveland C. C. & I. Ry. Co. v. Harrington,* 131 Ind. 426, 30 N. E. 37.) In the absence of evidence to the contrary, there is a presumption that a pedestrian, before attempting to cross railroad tracks, stopped, looked and listened. (Citing authorities given in opinion.)

The question as to whether the speed at which the train was going was so great as to be a negligent management of the train was properly submitted to the jury. (*Lapsley v. Union Pac. R. Co.,* 50 Fed. 172; *Chicago, St. L. & P. R. Co. v. Spilker,* 134 Ind. 380, 33 N. E. 280, 34 N. E. 218; *Thompson v. New York Cent. & H. R. R. Co.,* 110 N. Y. 636, 17 N. E. 690; *Cooper v. Los Angeles Terminal R. Co.,* 137 Cal. 229, 70 Pac. 11; *Willis v. Atlantic & D. R. Co.,* 122 N. C. 905, 29 S. E. 941; *Reed v. Queen Anne's R. Co.,* 4 Penne. (Del.) 413, 57 Atl. 529; *Marcott v. Marquette, H. & O. R. Co.,* 47 Mich. 1, 10 N. W. 53; *Bygum v. Southern Pac. R. Co.* (Cal.), 36 Pac. 415.)

"The running of locomotives and trains at a high rate of speed over street crossings in a city, even where the ordinary signals or the statutory ones are given, may constitute negligence, and render the company liable for injuries occasioned thereby." (*Cleveland, C. C. St. L. R. Co. v. Miles,* 162 Ind. 646, 70 N. E. 985; *McKerley v. Red River T. & S. R. Co.* (Tex. Civ.), 85 S. W. 499; *Nichols v. Chicago, B. & Q. R. Co.* (Colo.), 98 Pac. 808.)

AILSHIE, J.—The respondent, Addie Fleenor, as administratrix of the estate of Henry C. Fleenor, deceased, obtained a judgment against the appellant in the district court for the sum of $1,999, as damages for causing the death of

her husband. This appeal is from the judgment and order denying a motion for a new trial.

The appellant contends that the court erred in refusing to give a peremptory instruction to the jury to return a verdict in favor of defendant. The first contention made in support of this assignment of error is that the evidence fails to show that Henry C. Fleenor was on a public crossing where he had a right to travel over and across appellant's railway track and right of way at the time he was struck and killed by appellant's locomotive. It is admitted that the injury was inflicted on the evening of November 23, 1906, at about 7 o'clock. It is alleged by plaintiff that on the evening of that day "at a time when it was quite dark, the said Henry C. Fleenor was lawfully and rightfully crossing the said railroad track of the said defendant near the easterly boundary of said F street, and the defendant so negligently and carelessly ran and conducted an engine" that it struck and killed the said Henry C. Fleenor. The injury occurred at or near a street crossing in the city of Nampa. It is conceded that prior to the arrival of the train from the west, Fleenor walked west on the concrete sidewalk leading from the depot along the line of the main track and leading to F street. This sidewalk fills the entire space between the main track of appellant's road and its fence inclosing a plot of ground kept and maintained by the appellant company as a park immediately west of its depot and south of its track. This concrete walk is about seventeen feet wide and extends a distance of about 300 feet from the depot westerly to the F street crossing, in the city of Nampa.

It appears that about one-third of the population of the city of Nampa live on the north side of the railroad track, while the entire business portion of the city is on the south side of the track. The F street crossing is the principal crossing and thoroughfare of the city, and is used chiefly and principally by the inhabitants of Nampa and the traveling public generally in going back and forth from the south side to the north side. On the occasion of this accident, it

seems that Fleenor stepped off the sidewalk a short distance before reaching the east side line of the F street crossing and apparently started diagonally across the track in a northwesterly direction. One witness, who was standing on F street within a few feet of the track, says that Fleenor was struck when he was about eight feet from the crossing and while he was on the appellant's track. Other witnesses say he was struck before he reached the crossing. The witness Townsend, however, who testified on behalf of the plaintiff, swears positively that Fleenor was on F street when he was struck by defendant's engine. His particular attention was called to this fact while on the witness-stand, and he says he is positive that Fleenor was on the crossing at the time he was struck. When the engine struck the body of the deceased, it threw him a considerable distance,—one witness says at least twenty feet and he fell on the sidewalk. He was picked up from the sidewalk some fifteen or twenty feet distant from the crossing.

Appellant has argued with much force and cited a great many authorities to the effect and in support of its contention; that the plaintiff could not recover if the party injured was at the time a trespasser, for the reason that she has prosecuted her action on the theory that he was on a public crossing where he had a right to be, and that the duty a railroad company owes to a person at such a place is entirely different from the duty it owes to a trespasser. This contention may be conceded, and still we could not interfere with the verdict, for the reason that there is substantial and positive evidence that the deceased was struck at a time when he was on the public highway, the F street crossing. While other witnesses say he had not yet reached the crossing, the jury evidently believed the witness who testified that he was on the crossing at the time he was injured,—at least they had a right to believe such witness. Where the party injured was so near the line of the public crossing that it would take measurements to determine whether he was on or off the crossing, and eye-witnesses can reasonably differ as to his exact location, courts are not going to examine into the location

very carefully or minutely to determine whether he was in fact a trespasser or traveling at a place where he had a right and authority to go. The duty of the railroad company would be substantially the same in either event, because it could not, within a distance of eight feet, materially change its attitude with reference to diligence in operating its locomotive and train of cars, maintaining its outlooks, ringing its bell and sounding its whistle, and such other acts of diligence as the law requires at public crossings. In other words, the necessary diligence and precaution that would have saved the life of the deceased on the F street crossing would have, under the facts and circumstances of this case, saved and protected him at a distance of eight feet farther ahead of the engine. On this point the evidence was sufficient to go to the jury.

The next contention made by appellant is that the plaintiff alleged a number of concurring acts of negligence as causing the injury, but failed to prove some of those acts, and that she cannot recover unless she proved the concurrence of all the acts of negligence alleged in the complaint. That part of the complaint is as follows:

"And the defendant so negligently and carelessly ran and conducted an engine and a passenger train running east on said track at great speed across the said crossing of said F street, without sounding any bell or steam whistle and without giving any warning of its or their approach, and without having any headlight on said engine, and without having any watchman at said crossing to warn said intestate of the approach of said train."

It will be noted from this allegation that the defendant was charged with negligence in failure to sound a whistle or ring a bell, in failure to have a headlight on the engine, in the failure to have a watchman at F street crossing, and in the train running at excessive speed. Counsel cites in support of this contention *Wormsdorf v. Detroit City Ry Co.*, 75 Mich. 472, 13 Am. St. 453, 42 N. W. 1000, and *Weber Wagon Co. v. Kehl*, 139 Ill. 644, 29 N. E. 714. The former case supports the position taken by appellant as applied to

the facts of that particular case. The decision, however, there rested upon the proposition that it was necessary to take all the acts alleged together in order to constitute an act of negligence. It was said that had any one of those acts been performed, it would have avoided the injury and would have prevented the resulting negligence arising from all the acts alleged. That is not true in the present case. Here each act of negligence charged constituted a separate and independent act which, standing alone as a separate or distinct act of negligence, might result in such an injury as is charged to have resulted in this case. A failure to sound a whistle or ring a bell under such circumstances is a violation of a positive statute of this state. A failure to maintain a headlight on an engine or to maintain a watchman at certain crossings in populous communities, and likewise excessive speed, where large numbers of people are crossing the track at a public crossing, are matters that may or may not constitute negligence under the facts and circumstances of the particular case, any one of which acts of negligence may result in injury or death to a traveler.

The case of *Weber Wagon Co. v. Kehl* is directly opposed to the contention made by appellant. The court held that it was unnecessary for the plaintiff to prove all the charges of negligence made in the complaint. It is said: "The plaintiff had the right to aver in his declaration as many grounds of recovery as he saw proper, but it was not necessary to prove all that was alleged. It was enough to prove enough of the negligence charged to make out a case." So it was in this case. All that was necessary for the plaintiff to do was to prove such negligence on the part of the defendant company as would establish the proximate cause of the injury. That might have been one act of negligence, two or more acts or sundry independent acts, or as many concurring acts or as many independent and concurring acts.

The next point argued under the insufficiency of the evidence to go to the jury is the question as to whether there was any evidence tending to show that the engine was not provided with a headlight. On this question the evidence is

conflicting and somewhat unusual. Both the fireman and engineer testify positively that the engine carried an electric headlight that could be seen about ten miles on a straight track and that it was turned on at the station of Caldwell, which is about ten miles west of Nampa. Other witnesses on behalf of defendant testified that they saw a headlight on this engine as it pulled into Nampa. Witness Franz, a laboring man forty-six years old, then residing in Nampa, testified that just previous to this accident, he had started north and intended to cross the railroad track; that when he came to the crossing on F street he stopped to look and listen and says: "I was standing about two feet from the track. The Boise train was on the second track north of me. I was looking first west, then looking east to see if a train was coming. Henry C. Fleenor came down the other way. I was standing by the railroad track before I saw Fleenor, I think, two or three minutes. When I first saw him he started to cross the railroad track when the train was coming. At that time he was struck by the engine and the cowcatcher turned him over three times and threw him out just along the side of me. I did not see the train at all until it struck him. . . . . The train come full speed. I did not hear the train at that time. I did not hear any bell ringing on the engine, or hear any whistle blown, or signal given of the approach of the train at that time. I did not see any headlight on this engine that struck Fleenor."

Witness Townsend was running a butcher-shop on F street in Nampa, about 300 feet south of the railroad crossing, and he testifies that he was expecting a friend on the west-bound train that evening and that he heard a whistle and supposed that it was that train; that he immediately locked his shop and ran down the street to the railroad track, and that as he got within about fifteen feet of the track on F street he saw the Boise train moving west on the second track from it, and that he heard some one halloo "look out," and he saw a man crossing the first track as though he were trying to catch the Boise train, and that at the same instant he saw the man he also saw the engine of the east-bound train on the first

track strike the man and "knocked him about twenty feet on the sidewalk." He says the train was "running very fast" and that it was on the street before he saw it at all. He further says: "I never noticed any headlight on No. 6. I could not say positively about the headlight. My attention was drawn to the man, but it was very dark on the track and it seems as if there had been a headlight it would have shone right on the man."

The evidence shows that Fleenor was an energetic, vigorous and active young man, only thirty-six years old; that he was walking with his face turned in a westerly or northwesterly direction, so that he could have seen the train had it been light or had it been displaying a headlight. It is evident that he did not see the train until some one called out to him to "look out." He seems to have been startled and confused when he saw the train and attempted to return to the sidewalk he had just left. The contention made by appellant on the insufficiency of this evidence to go to the jury on the question of the failure of the company to display a headlight on the engine of train No. 6 is that several witnesses testify positively that the engine was carrying a headlight, while the other witnesses simply testify to not seeing the headlight, and that one who testifies to a negative does not raise a conflict of evidence as against one who testifies to a positive. In other words, the one who testifies that he did not see a light does not by such testimony create a conflict of evidence as against one who testifies that he did see the light at the time and place in question. In support of this principle of law appellant cites the following authorities: *Horn v. Baltimore & O. R. R. Co.*, 54 Fed. 301, 4 C. C. A. 346; *Chicago & N. W. Ry. Co. v. Andrews*, 130 Fed. 65, 64 C. C. A. 399; *The Fin MacCool*, 147 Fed. 123, 77 C. C. A. 349; *Culhane v. New York Central & H. R. Co.*, 60 N. Y. 133; *Hubbard v. Boston & Albany R. R. Co.*, 159 Mass. 320, 34 N. E. 459; *Hoffman v. Fitchburg R. Co.*, 67 Hun, 581, 22 N. Y. Supp. 463; *Floyd v. Phila. R. R. Co.*, 162 Pa. 29, 29 Atl. 396; *Idaho Mer. Co. v. Kalanquin*, 8 Ida. 101, 66 Pac. 933.

Among these authorities the appellant places special reliance on the case of *Idaho Mercantile Co. v. Kalanquin,* 8 Ida. 101, 66 Pac. 933.  It should be noted, however, that in the latter case the witness had simply answered, "I don't remember" and "I don't recollect" and "I am not sure." This class of testimony was held not to be sufficient to raise a conflict in the evidence as against witnesses who testified positively, and was not sufficient to go to the jury on the questions involved.  That case cannot be considered as authority under the present state of facts.

Respondent contends, however, that this class of evidence in a case involving the issue raised here is more than merely negative evidence; that it partakes of the nature of positive proof of an issue raised by the pleadings, and in support of this contention respondent has cited us to a number of authorities.  Before proceeding to consider the authorities, we should recall the nature of the issue that plaintiff was called upon to establish by her proofs.  She alleged, among other things, that the injury resulted from the negligence of the defendant in failing to display a headlight on the engine that struck and killed her intestate.  While it was incumbent on her to prove that a certain thing did not exist, namely, that a headlight was not displayed, still that was a positive and affirmative issue but could not be directly proven by affirmative evidence.  In other words, it could not be proven by proving that the light was there, but it was necessary to prove it by proving that darkness existed where a light should have been.  Moore on Facts (vol. 1, sec. 43), says:

"Frequently a negative fact can be established only by proving some affirmative fact or state of facts which is inconsistent with the affirmative of the proposition to be negatived, and which, therefore, raises a presumption that the negative is true.  Any evidence which creates a fair and reasonable presumption of the existence of the negative is sufficient until overcome by some evidence to the contrary, especially where the affirmative fact is peculiarly within the knowledge of the opposite party so that he can easily prove it if necessary to establish his contention."

In *Johanson v. Boston & M. R. Co.*, 153 Mass. 57, 26 N. E. 426, the supreme court of Massachusetts, in discussing evidence of this character as to the ringing of a bell, said:

"Next, we cannot say that there was no evidence, slight as it was, that the defendant failed to ring its bell, or sound its whistle. One witness testified that he heard no noise made by the engine before the children were struck; another that he heard three sharp whistles just as the boys were struck, but heard no whistle before. those. This went further than the testimony in *Tulley v. Fitchburg Ry. Co.*, 134 Mass. 499, that the witness did not remember whether he heard a whistle or not. The witnesses said that they remembered that they did not hear it." In *Atchison T. & S. F. R. Co. v. Feehan*, 149 Ill. 202, 36 N. E. 1036, the court said:

"As to the first of these charges of negligence, all that need be said is that, while several witnesses testified with more or less of positiveness that a bell was ringing continuously, while the train was approaching the crossing, one or more witnesses, who were in a position to hear, testified that they did not hear the bell rung. This was evidence tending to show that no bell was rung, sufficient to make it the duty of the court to submit the question to the jury."

In *McLean v. Erie R. Co.*, 69 N. J. L. 57, 54 Atl. 238, the supreme court of New Jersey, in considering the action of a trial court in permitting evidence of this kind to go to a jury and in refusing to give a peremptory instruction, said:

"We are unable to see upon what principle a judge is justified in stating to a jury that one piece of evidence, which is legitimate, is not to be treated by the jury the same as other evidence in the cause. It is for the jury to say whether the testimony of a witness, having an equal opportunity to hear and whose hearing is equally good, and who testifies that he did not hear the blowing of a whistle or the ringing of a bell, notwithstanding he listened, shall or shall not be given equal credit with the testimony of a witness, similarly situated, who testifies that he did hear. There was no error in the refusal of the trial judge to charge the request excepted to."

In *Riley v. Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948, the supreme court of Montana, in considering the weight that should attach to evidence that a headlight was not burning on a locomotive, said:

"On the part of the defendant there was positive testimony that the bell was ringing and the light burning. The plaintiff's witnesses simply testified that they did not hear any bell or see any light. Appellant argues that this negative testimony is of no weight, in view of the positive testimony opposed to it. Ordinarily, when one witness testifies positively that a certain thing existed or happened, and another witness, with equal means of knowing, testifies that the thing did not exist or happen, the so-called negative testimony is so far positive in its character that a court could not say that it was entitled to less weight than the affirmative testimony."

Many other authorities have been cited by respondent holding to the same effect as the foregoing on the weight and sufficiency of this class of evidence, some holding that although negative in character it is proper to go to the jury even though it is contradicted by testimony of eye-witnesses. Other cases hold that it should not be classed as negative evidence where it tends to prove a positive and affirmative issue but is entitled to enter the category of positive proof, although negative in character. See the following cases: *Nichols v. Chicago, B. & Q. R. Co.* (Colo.), 98 Pac. 808; *Hubbard v. Boston R. R. Co.*, 159 Mass. 320, 34 N. E. 459; *Railway Co. v. Slatterly*, L. R. 3 App. Cas. 1155; *Staal v. Grand Rapids & I. R. Co.*, 57 Mich. 239, 23 N. W. 795; *Murray v. Missouri Pac. Ry. Co.*, 101 Mo. 236, 20 Am. St. 601, 13 S. W. 817; *Isaacs v. Skrainka*, 95 Mo. 517, 8 S. W. 427; *Goodwin et ux. v. Central R. R. Co.*, 73 N. J. L. 576, 64 Atl. 134; *Cleveland C. C. & St. L. Ry. Co. v. Wuest*, 41 Ind. App. 210, 83 N. E. 620; *Ohio etc. R. Co. v. Buck*, 130 Ind. 300, 30 N. E. 19; *Cleveland etc. R. Co. v. Schneider*, 40 Ind. App. 524, 82 N. E. 538; *Louisville & N. R. Co. v. Molloy's Admx.* (Ky.), 107 S. W. 217; *Chesapeake & Ohio Ry. Co. v. Nipp's Admx.*, 125 Ky. 49, 100 S. W. 246; *Chicago & N. W. R. Co. v. Whitton*,

13 Wall. 270, 20 L. ed. 571; *Detroit So. R. Co. v. Lambert,*
150 Fed. 555, 80 C. C. A. 357; *Northern Pac. R. R. Co. v.
Freeman,* 174 U. S. 379, 19 Sup. Ct. 763, 43 L. ed. 1014;
*Lee v. Chicago R. I. & P. Ry. Co.,* 80 Iowa, 172, 45 N. W.
739; *Chicago & A. Ry. Co. v. Pulliam,* 208 Ill. 456, 70 N.
E. 460; *Hanlon v. Missouri Pac. Ry. Co.,* 104 Mo. 381, 16 S.
W. 233; *Pennsylvania R. Co. v. Coon,* 111 Pa. 430, 3 Atl.
234; *Winterbottom v. Phila. B. & W. R. Co.,* 217 Pa. 574,
66 Atl. 864; *Berg v. Chicago M. & St. P. R. Co.,* 50 Wis.
419, 7 N. W. 347; *Reed v. Chicago, St. P. M. & O. R. Co.,*
74 Iowa, 188, 37 N. W. 149; *English v. Southern Pac. Co.,* 13
Utah, 407, 57 Am. St. 772, 45 Pac. 47, 35 L. R. A. 155; *An-
nacker v. Chicago R. I. & P. R. Co.,* 81 Iowa, 267, 47 N. W.
68; *Lapsley v. Union Pac. R. Co.,* 50 Fed. 172.

The next question presented involves the action of the court
in permitting evidence to go to the jury tending to show that
this particular train No. 6, east-bound, was running at a
dangerous rate of speed. The engineer, fireman and conduc-
tor testified that it was running at the rate of speed at which
it usually runs in the city of Nampa and at the time it crossed
F street was not running more than about eight or ten miles
an hour. Other witnesses testified that it was running at its
regular rate of speed and not less than twenty or twenty-
five miles an hour. This was the testimony of persons who
were standing close to the track when the train came in. We
attach as much importance and significance to the evidence of
one disinterested witness, Mrs. Nellie Foust, as to any of the
other witnesses. She was at the street corner at the Dewey
Palace Hotel, one block distant from the track, when this
train came in. She testified that her husband was a railroad
man and had been for many years, and that she had formed
the habit of noticing trains when they came in. She said
her attention was attracted to this train because it was run-
ning "very fast" when it crossed F street. In fact, it was
coming into the depot at such a rapid speed that she com-
mented on the fact at the supper-table that evening and be-
fore she had learned of this accident. The witness Franz,
who was standing within a couple of feet of the track, said

that it was running at "full speed." Appellant contends, however, that under the allegations of the complaint this evidence was wholly inadmissible and should not have gone to the jury. The complaint alleges that the "defendant so negligently and carelessly ran and conducted an, engine and a passenger train running east on said track at great speed across the said crossing of said F street," etc., that as a result the injuries complained of were inflicted. This allegation is also coupled with the allegation that it failed to sound any bell or whistle or give any warning or maintain a headlight, etc. The court admitted the evidence tending to show the train was running at an unusual and rapid speed as it made this crossing, and the court instructed the jury on this question as follows: "But you are instructed that if said engine which caused the death of Henry C. Fleenor was being run by the employees of defendant at a high and dangerous rate of speed, such speed being so high and dangerous as to become a negligent management of the train and engine, and that such accident resulted in consequence thereof, then the jury will find the issues for the plaintiff."

The court also instructed the jury in this connection that there is no statute in the state regulating the speed of trains, and that there was no proof in the case of any ordinance of the city of Nampa regulating or restricting the speed of trains within the city limits or at any street crossing, and that no speed at which the train might have been running would justify the injured party in going upon the track without looking and listening and exercising due care and precaution. He also instructed the jury that if the deceased was guilty of contributory negligence, plaintiff could not recover.

We think the court properly admitted the evidence, and that the instructions taken together correctly presented the law to the jury.

The fact that a railway train is running at a rapid and dangerous speed over a street crossing is no excuse or justification for a person subjecting himself to the danger and hazard of being run over. It should be remembered that a

like duty rests upon both the railroad company and the pedestrian or other traveler who is crossing the track on a public highway. The railroad company and the traveler have equal and like rights and upon them rest like responsibilities. This is subject, however, to the duty of the pedestrian or other traveler on the highway to give way for the passage of trains. Each has a right to assume that the other will act with due care and precaution for the rights of the other, and will not be guilty of negligence or a reckless disregard of duty in the discharge of the obligations due to the other and the public generally. The railroad company has a right to assume that the traveling public will look and listen for passing trains, and that having looked and listened, they will discover the on-coming train and clear the track. The traveler has an equal and like right to assume that the railroad company will give the required signals of the train's approach, and that it will be running and operating its trains at such places at the usual and ordinary rates of speed. The pedestrian who sees a train coming miles away has a right to assume that it is running at the usual speed and that he can cross the track without being wounded or killed. He has a right to assume that the train will observe the usual regulations and precautions at street crossings. If the operatives fail to give or display those signals by which the traveling public are able to see and hear approaching trains, the exercise of the usual precautions of looking and listening are not likely to serve the protective and preventive ends for which they are intended. The company must make the approach of its trains at such places known by appropriate means so that by looking and listening, the traveler crossing its track may be able to discover its approach.

The same contention is made by appellant as to the insufficiency of the evidence to establish the failure of appellant to ring the bell or sound the whistle for F street crossing as is made with reference to the headlight, and what we have said with reference to the character of evidence on that subject is applicable to this. This distinction should always be kept in mind in considering evidence given by witnesses that

they did not hear or see a specific thing or act: if the witness was in a position or placed under such circumstances that he would in all reasonable probability have seen or heard the act or transaction, had it taken place, then his evidence is entitled to consideration the same as that of any other witness testifying concerning the same transaction. But, on the other hand, if the witness was engaged at something which engrossed his attention so that he would not likely have seen, heard or observed the act or transaction, then his evidence is not entitled to much, if any, consideration. In the case at bar, at least two of the witnesses, Townsend and Franz, were looking for this particular train—were expecting it; their minds were apparently at the time dwelling on the subject of the arrival of this train. They were looking and listening for it. Although they may not have had their minds particularly centered on the specific fact as to whether the bell was rung, the whistle sounded or a headlight was displayed, still they were listening for this train and observing its arrival. Their evidence, therefore, that they did not hear a whistle or a bell or see a headlight or that no whistle was sounded or no bell rung or no headlight displayed, is competent, and we may say positive, evidence on those subjects, and was entitled to go to the jury.

The appellant complains of the action of the court in allowing evidence to be introduced showing that the railroad company did not provide a flagman or any gates for the F street crossing, and in also allowing evidence showing that the company did not have a fence between the sidewalk and the track. As we understand the record, the evidence that was introduced with reference to the fence was given merely for the purpose of showing that there was no obstruction between the sidewalk and the track to prevent pedestrians from crossing the track at any place or diagonally as it is claimed by the appellant that Fleenor did in this case. As to the evidence in regard to maintaining gates and a flagman at the crossing, we see no error in the action of the court. No ordinance of the city of Nampa was shown requiring any such thing, but the fact that the city had no ordinance requiring

the railroad company to maintain gates or station a flagman at this crossing would not relieve the company from the charge of negligence in failing to do so, if, in fact, the relative situations of the track and crossing and the extent of its use were such as reasonable care and diligence on the part of a reasonably prudent person would demand such precaution for the protection of the traveling public. (*Bilton v. Southern Pac. Co.*, 148 Cal. 443, 83 Pac. 440; *English v. Southern Pac. Co.*, 13 Utah, 407, 57 Am. St. 772, 45 Pac. 47, 35 L. R. A. 155; *Cleveland, C. C. St. L. R. Co. v. Miles*, 162 Ind. 646, 70 N. E. 985; *Thompson v. New York Cent. & H. R. R. Co.*, 110 N. Y. 636, 17 N. E. 690; *Chicago, St. L. & P. R. Co. v. Spilker*, 134 Ind. 380, 33 N. E. 280, 34 N. E. 218; *Cooper v. Los Angeles Terminal R. Co.*, 137 Cal. 229, 70 Pac. 11; *Lapsley v. Union Pac. R. Co.*, 50 Fed. 172.)

The question as to whether the railroad company was guilty of negligence in not maintaining gates at this crossing or keeping a flagman there was properly a question of fact to go to the jury, under all the circumstances of the case and the necessities and requirements of the peculiar use of this crossing and the extent of that use by the public. Such a duty rests upon a different principle from that of ringing a bell or blowing a whistle. The latter is required by positive mandate of the statute, and a failure to do so is negligence *per se*. (*Wheeler v. Oregon R. & N. Co., ante*, p. 375, 102 Pac. 347.) While the duty to maintain gates and keep a flagman at a crossing is not enjoined by statute and under some, and perhaps ordinary, circumstances is not required as an act of due diligence and reasonable precaution, still under other facts and a different situation a failure to do so would constitute negligence at common law, irrespective of statutory requirement. (*English v. Southern Pac. Co.*, 13 Utah, 407, 57 Am. St. 772, 45 Pac. 47, 35 L. R. A. 155, and cases there cited; *Annaker v. Chicago, R. I. & P. R. Co.*, 81 Iowa, 267, 47 N. W. 68; *Lapsley v. Union Pac. R. Co.*, 50 Fed. 172.)

It is contended by the appellant that the question as to whether the company kept a flagman at this crossing was

wholly immaterial, for the reason that the deceased did not go upon the track at the crossing, but stepped upon the track some distance from the street line and became a trespasser, and that the flagman, therefore, would have served no purpose toward his protection had he been stationed there. This contention is not sound. If a flagman had been stationed at this crossing (provided it was such a place that due diligence and reasonable care required a flagman), it would have been his business to keep the track clear at times of danger from moving trains and engines. As was said by the supreme court of Missouri in *Dickson v. Missouri Pac. Ry. Co.*, 104 Mo. 491, 16 S. W. 383:

"It is the duty of such watchman to keep the crossing clear at times of danger from moving trains. If one had been at the intersection of Gratiot street and the levee at the time of this collision, it would have been his duty to give plaintiff and the driver of the wagon warning of the approaching train before the wagon was driven onto the crossing. and hence the jurors might very well find that the injury occurred because no watchman was there at the time."

It was not error for the court to admit evidence tending to show these several acts of negligence.

Appellant further contends that the defense of contributory negligence on the part of Fleenor was fully and clearly established, and for that reason the verdict and judgment is not supported by the evidence. In addition to the witnesses Townsend and Franz, whose testimony has in part been recited hereinbefore, the defendants produced one Tim Donovan, who was its section foreman at Nampa, and he, too, testified to being on the F street crossing at the time the train came in. He says that while standing there he saw three men walking from the depot toward F street on the sidewalk. He says that one man (who proved to be Fleenor) stepped on the track before reaching the crossing and he, Donovan, hallooed at him and another man pointed to the engine of the train that was coming in; that when he did so, Fleenor raised his hands and turned to step back on the platform, and as he got just outside of the rail the

pilot beam on the engine struck him. He says that the engine was some fifty or fifty-five feet away when Fleenor stepped on the track. This corresponds with the evidence of the other two witnesses who say that they never saw the engine until it reached about what would be the west side line of the F street crossing. It seems clear to us from the evidence of all these witnesses that Fleenor did not see the train until his attention was called to it by these witnesses who were standing on the sidewalk. The fact that Fleenor was an alert, active and energetic man, as appears from the evidence, and that he was traveling with his face toward the west, the direction from which the train was coming, and that if this train had been displaying a headlight he would have been likely to see it, or had it been ringing the bell he would have been likely to hear it, tends to, at least in a measure, corroborate the evidence to the effect that this engine did not display a headlight and that no bell was rung or signal given. It is fair to presume, until the contrary is proven, and this presumption is sustained by a rule of law, that one who was killed while crossing a railroad track was exercising due and proper care for the protection of his person and the preservation of his life. The presumption which arises in favor of the instincts of self-preservation and the known disposition of men to avoid injury and personal harm to themselves is sufficient to constitute *prima facie* evidence that the person killed was at the time of the accident free from contributory negligence. (*Adams v. Bunker Hill etc. Min. Co.,* 12 Ida. 643, 11 L. R. A., N. S., 844, 89 Pac. 624; *Baltimore & P. R. Co. v. Landrigan,* 191 U. S. 461, 24 Sup. Ct. 137, 48 L. ed. 262; *Kimball v. Friend's Admx.,* 95 Va. 125, 27 S. E. 901; *Continental Improv. Co. v. Stead,* 95 U. S. 161, 24 L. ed. 403; *Looney v. Metropolitan R. Co.,* 200 U. S. 480, 26 Sup. Ct. 303, 50 L. ed. 564; *Kansas City-Leavenworth R. Co. v. Gallagher,* 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 344; *Railroad Co. v. Gladmon,* 15 Wall. 401, 21 L. ed. 114; *Roberts v. Canal Co.,* 177 Pa. 183, 35 Atl. 723; *Railroad Co. v. Griffith,* 159 U. S. 603, 16 Sup. Ct. 105, 40 L. ed. 274.)

The evidence of the eye-witnesses tended very strongly to refute this presumption, and to show that as a matter of fact Fleenor did not look or listen, and the decided preponderance of the evidence is in favor of the defendant. There were, however, sufficient facts and circumstances shown upon the trial to entitle the plaintiff to have the case submitted to the jury on the question, both of the negligence of the defendant and of the contributory negligence of the deceased. The jury saw and heard all the witnesses and had all the facts and circumstances before them, and have preferred to believe the evidence produced on the part of the plaintiff and the plaintiff's theory of the case, and under the mandate both of the statute of this state (sec. 4824, Rev. Codes) and the repeated decisions of this court, we would not be justified in disturbing the verdict on this ground.

It has been well said by one court (in *Pittsburg, Fort W. & C. R. Co. v. Callaghan,* 157 Ill. 406, 41 N. E. 909) that: "Where the evidence on material facts is conflicting, or where on undisputed facts fair-minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. With all the facts considered, if there is a reasonable chance of conclusions differing thereon, then it is a question for a jury." (*Booth v. Union Terminal R. Co.,* 126 Iowa, 8, 101 N. W. 147; *Adams v. Bunker Hill etc. Min. Co., supra.*)

Appellant submitted a number of instructions to the court and requested that they be given to the jury. The court refused the defendant's requests and instructed the jury on his own motion on all the material points in the case. After a careful examination of the whole instructions, we think that they are as favorable to the defendant as the law would justify. Some of the requests submitted properly state the law on the particular subject, while others are entirely misleading, argumentative and too favorable to the defendant. A part of these requests are based on the as-

sumption that Fleenor was a trespasser on defendant's track at the time of the injury. Such an instruction was not necessary or proper in this case for the reasons we have hereinbefore stated, namely, that there was substantial evidence tending to show that the deceased at the time of his injury was not a trespasser, but was on the street crossing where he had a right to travel. We do not deem it necessary that we consider or discuss these instructions separately or in detail. We do not think any error was committed in refusing to give the requests asked by the defendant.

Other errors have been assigned and discussed in the briefs, but we do not deem it important to consider or review them in this opinion. We find nothing that would require or justify a reversal of the judgment. Judgment affirmed with costs in favor of respondent.

Sullivan, C. J., and Stewart, J., concur.